# KIRBY *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
DISTRICT OF SOUTH DAKOTA.

No. 164. Argued January 20, 1899. — Decided April 11, 1899.

On the trial of a person charged with feloniously receiving and having
in his possession with intent to convert them to his own use, postage
stamps which had been feloniously stolen, taken and carried away from
a post office by three persons named, although the person so receiving
them well knew that the same had been so feloniously taken, stolen and
carried away, the judgment convicting the said three persons of stealing
the said stamps was received in evidence against the accused, under the
provision in the act of March 3, 1875, c. 144, § 2, that such judgment
" shall be conclusive evidence against said receiver, that the property of
the United States therein described has been embezzled, stolen or pur-
loined." The accused having been convicted, and the case brought here
by writ of error, *Held,* That that provision of the statute violates the
clause of the Constitution of the United States, declaring that in all
criminal prosecutions, the accused shall be confronted with the wit-
nesses against him ; and that the judgment must be reversed.

The contention by the defendant that the indictment is defective in that it
does not allege ownership by the United States of the stolen articles of
property at the time that they were alleged to have been feloniously re-
ceived by him, is without merit.

The objection that the indictment does not show from whom the accused
received the stamps, nor state that the name of such person was un-
known to the grand jurors, is not well taken.

THE case is stated in the opinion of the court.

*Mr. A. G. Safford* for plaintiff in error. *Mr. C. O. Bailey*
and *Mr. Joseph Kirby* were on his brief.

*Mr. Assistant Attorney General Boyd* for defendants in
error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The plaintiff in error Kirby was indicted in the District
Court of the United States for the Southern Division of the
District of South Dakota under the act of Congress of March 3,

1875, c. 144, entitled "An act to punish certain larcenies, and the receivers of stolen goods." 18 Stat. 479.

The first section provides that "any person who shall embezzle, steal or purloin any money, property, record, voucher or valuable thing whatever of the moneys, goods, chattels, records or property of the United States shall be deemed guilty of felony, and on conviction thereof before the District or Circuit Court of the United States in the district wherein said offence may have been committed, or into which he shall carry or have in possession said property so embezzled, stolen, or purloined, shall be punished therefor by imprisonment at hard labor in the penitentiary not exceeding five years or by a fine not exceeding five thousand dollars, or both, at the discretion of the court before which he shall be convicted."

By the second section it is provided that "if any person shall receive, conceal or aid in concealing, or have, or retain in his possession with intent to convert to his own use or gain, any money, property, record, voucher or valuable thing whatever, of the moneys, goods, chattels, records or property of the United States, which has theretofore been embezzled, stolen or purloined, such person shall, on conviction before the Circuit or District Court of the United States in the district wherein he may have such property, be punished by a fine not exceeding five thousand dollars, or imprisonment at hard labor in the penitentiary not exceeding five years, one or both, at the discretion of the court before which he shall be convicted; and such receiver may be tried either before or after the conviction of the principal felon, but if the party has been convicted, then the judgment against him shall be conclusive evidence in the prosecution against such receiver that the property of the United States therein described has been embezzled, stolen or purloined." 18 Stat. 479.

The indictment contained three counts, but the defendant was tried only on the first. In that count it was stated that Thomas J. Wallace, Ed. Baxter and Frank King on the 7th day of June, 1896, at Highmore, within the jurisdiction of the court, feloniously and forcibly broke into a post office of the United States, and feloniously stole, took and carried away

therefrom certain moneys and property of the United States, to wit: 3750 postage stamps of the denomination of two cents and of the value of two cents each, 1266 postage stamps of the denomination of one cent and of the value of one cent each, 140 postage stamps of the denomination of four cents and of value of four cents each, 250 postage stamps of the denomination of five cents and of the value of five cents each, 80 postage stamps of the denomination of eight cents and of the value of eight cents each, and also United States Treasury notes, national bank notes, silver certificates, gold certificates, silver, nickel and copper coins of the United States as well as current money of the United States, a more particular description of which the grand jury were unable to ascertain, of the value of $58.19; and that the persons above named were severally indicted and convicted of that offence, and had been duly sentenced upon such conviction.

It was then alleged that the defendant on the 9th day of June, 1896, at the city of Sioux Falls, the postage stamps "so as aforesaid feloniously stolen, taken and carried away, feloniously did receive and have in his possession, with intent then and there to convert the same to his own use and gain, the said Joe Kirby then and there well knowing the said postage stamps to have been theretofore feloniously stolen, taken and carried away, contrary to the form, force and effect of the statutes of the United States in such cases made and provided and against the peace and dignity of the United States."

At the trial of Kirby the Government offered in evidence a part of the record of the trial of Wallace, Baxter and King, from which it appeared that Wallace and Baxter after severally pleading not guilty withdrew their respective pleas and each pleaded guilty and was sentenced to confinement in the penitentiary at hard labor for the term of four years. It appeared from the same record that King having pleaded not guilty was found guilty and sentenced to the penitentiary at hard labor for the term of five years.

The admission in evidence of the record of the conviction of Wallace, Baxter and King was objected to upon the ground that the above act of March 3, 1875, was unconstitutional so

far as it made that conviction conclusive evidence in the prosecution of the receiver that the property of the United States described in the indictment against him had been embezzled, stolen or purloined. The objection was overruled, and the record offered was admitted in evidence, with exceptions to the accused.

After referring to the provisions of the act of March 3, 1875, and to the indictment against Kirby, the court among other things said, in its charge to the jury : " In order to make out the case of the prosecution and in order that you should be authorized to return a verdict of guilty in this case, you must find beyond a reasonable doubt from the evidence in the case certain propositions to be true. In the first place it must be found by you beyond a reasonable doubt that the property described in the indictment, and which is also described in the indictment against these three men [Wallace, Baxter and King] who it is alleged have been convicted, was actually stolen from the post office at Highmore, was the property of the United States and of a certain value. Second. You must find beyond a reasonable doubt that the defendant Joseph Kirby received or had in his possession a portion of that property which had been stolen from the post office at Highmore. Third. That he received or had it in his possession with intent to convert it to his own use and gain. Now, upon the first proposition — as to whether the property described in the indictment was stolen as alleged in the indictment — the prosecution has introduced in evidence the record of the trial and conviction of what are known as the principal felons — that is, the parties who it is alleged committed the larceny. Now, in the absence of any evidence to the contrary, the record is sufficient proof in this case upon which you would be authorized to find that the property alleged in that indictment was stolen as alleged ; in other words, it makes a *prima facie* case on the part of the Government which must stand as sufficient proof of the fact until some evidence is introduced showing the contrary, and, there being no such evidence in this case, you will, no doubt, have no trouble in coming to a conclusion that the property

described in the indictment was actually stolen, as alleged, from the post office at Highmore. But I don't want you to understand me to say that that record proves that the stamps that were found in Kirby's possession were stolen property, or that they were the stamps taken from the Highmore post office. Upon the further proposition that the court has suggested, after you have found, by a careful consideration of all the evidence, beyond a reasonable doubt, that the property alleged in the indictment was stolen, then you will proceed to consider whether or not the defendant ever at any time, either on the date alleged in the indictment or any other date within three years previous to the finding of the indictment, had in his possession or received any of this property which was stolen from the post office at Highmore. Now, in order to find the defendant guilty of the offence charged in the indictment, you would have to find beyond a reasonable doubt from all the evidence that he either actually received a portion or all of the property which was stolen from the post office at Highmore, and that he received that property from the thief or thieves who committed the theft at the Highmore post office or some agent of these thieves. The statute punishes, you will observe, both the receipt of stolen property, knowing it to have been stolen, with the intent described in the statute, and also the having in the possession such property, knowing it to have been stolen, with the intent to convert it to the person's own use or gain. If you find beyond a reasonable doubt that any of the property which was stolen at the post office at Highmore was actually received or had in the possession of the defendant, then you cannot convict unless you further find that the defendant had the property in his possession or received it from the thief or his agent, knowing at the time that it was stolen property. Now, upon the question of whether the defendant knew that it was stolen property, you will, of course, consider all the evidence in the case. You have the right to find that the person or the defendant knew that it was stolen property from the admissions he may have made, if he made any, if there is such evidence in the case, or from other circumstances that you would have the right to infer

that he did know. Now, if a person received property under such circumstances that would satisfy a man of ordinary intelligence that it was stolen property, and you further find beyond a reasonable doubt that he actually did believe it was stolen property, then you have a right to infer and find that at the time of the receipt of the property the person knew that it was stolen. Now, the next point in the case is in regard to the intent the defendant had in regard to the use or disposal of the property. The statute requires that this receipt of stolen property, knowing it to have been stolen, must also be with the intent to convert it to the use of the party in whose possession it is found. There are statutes which simply punish the knowingly receiving stolen property. That was the common law. But this statute has added this further ingredient that it must be done with the intent to convert it to the party's own use and gain. It was probably put in for the reason that the statute goes further than the common law, making it punishable to conceal or aid in concealing with intent to convert it to his own use and gain. Now, all these propositions that I have charged must be made out by the prosecution, of course, beyond a reasonable doubt, and in case you have a reasonable doubt of any of these ingredients, it will be your duty to acquit the defendant."

In response to a request from the jury to be further instructed, the court after referring to the indictment and to the second section of the act of 1875, said : "This indictment does not contain all the words of the statute. This indictment charges the defendant with having, on the 9th day of June, 1896, received and had in his possession these postage stamps that were stolen from the United States at Highmore. Now, if you should find beyond a reasonable doubt from all the testimony in the case, in the first place, that the postage stamps mentioned in the indictment or any of them were stolen from the post office at Highmore by these parties who it is alleged did steal them, and you further find beyond a reasonable doubt that these postage stamps or any portion of them were on the 9th day of June, 1896, received by the defendant from the thieves or their agent, knowing the same to have

been so stolen from the United States by these parties, with the intent to convert the same to his own use and gain, or if you find beyond a reasonable doubt that they were so stolen at the Highmore post office, as I have stated, and that the defend- ant, on or about the 9th day of June had them in his posses- sion or any portion of them, knowing the same to have been so stolen, with the intent to convert the same to his own use and gain, and you will find all these facts beyond a reasonable doubt, you would be authorized to return a verdict of guilty as charged."

The jury returned a verdict of guilty against Kirby. The exceptions taken by him at the trial were sufficient to raise the questions that will presently be considered.

As shown by the above statement the charge against Kirby was that on a named day he feloniously received and had in his possession with intent to convert to his own use and gain certain personal property of the United States, theretofore feloniously stolen, taken and carried away by Wallace, Baxter and King, who had been indicted and convicted of the offence alleged to have been committed by them.

Notwithstanding the conviction of Wallace, Baxter and King, it was incumbent upon the Government, in order to sustain its charge against Kirby, to establish beyond reason- able doubt (1) that the property described in the indictment was in fact stolen from the United States; (2) that the de- fendant received or retained it in his possession, with intent to convert it to his own use or gain; and (3) that he received or retained it with knowledge that it had been stolen from the United States.

How did the Government attempt to prove the essential fact that the property was stolen from the United States? In no other way than by the production of a record showing the conviction under a separate indictment of Wallace, Baxter and King — the judgments against Wallace and Baxter resting wholly upon their respective pleas of guilty, while the judg- ment against King rested upon a trial and verdict of guilty. With the record of those convictions out of the present case,

there was no evidence whatever to show that the property alleged to have been received by Kirby was stolen from the United States.

We are of the opinion that the trial court erred in admitting in evidence the record of the convictions of Wallace, Baxter and King, and then in its charge saying that in the absence of proof to the contrary, the fact that the property was stolen from the United States was sufficiently established against Kirby by the mere production of the record showing the conviction of the principal felons. Where the statute makes the conviction of the principal thief a condition precedent to the trial and punishment of a receiver of the stolen property, the record of the trial of the former would be evidence in the prosecution against the receiver to show that the principal felon had been convicted; for a fact of that nature could only be established by a record. The record of the conviction of the principals could not however be used to establish, against the alleged receiver, charged with the commission of another and substantive crime, the essential fact that the property alleged to have been feloniously received by him was actually stolen from the United States. Kirby was not present when Wallace and Baxter confessed their crime by pleas of guilty, nor when King was proved to be guilty by witnesses who personally testified before the jury. Nor was Kirby entitled of right to participate in the trial of the principal felons. If present at that trial he would not have been permitted to examine Wallace and Baxter upon their pleas of guilty, nor cross-examine the witnesses introduced against King, nor introduce witnesses to prove that they were not in fact guilty of the offence charged against them. If he had sought to do either of those things — even upon the ground that the conviction of the principal felons might be taken as establishing *prima facie* a vital fact in the separate prosecution against himself as the receiver of the property — the court would have informed him that he was not being tried and could not be permitted in anywise to interfere with the trial of the principal felons. And yet the court below instructed the jury that the conviction of the principal felons upon an indictment

against them alone was sufficient *prima facie* to show, as against Kirby, indicted for another offence, the existence of the fact that the property was stolen — a fact which, it is conceded, the United States was bound to establish beyond a reasonable doubt in order to obtain a verdict of guilty against him.

One of the fundamental guarantees of life and liberty is found in the Sixth Amendment of the Constitution of the United States, which provides that "in all criminal prosecutions the accused shall . . . be confronted with the witnesses against him." Instead of confronting Kirby with witnesses to establish the vital fact that the property alleged to have been received by him had been stolen from the United States, he was confronted only with the record of another criminal prosecution, with which he had no connection and the evidence in which was not given in his presence. The record showing the result of the trial of the principal felons was undoubtedly evidence, as against *them*, in respect of every fact essential to show *their* guilt. But a fact which can be primarily established only by witnesses cannot be proved against an accused — charged with a different offence for which he may be convicted without reference to the principal offender — except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases. The presumption of the innocence of an accused attends him throughout the trial and has relation to every fact that must be established in order to prove his guilt beyond reasonable doubt. "This presumption," this court has said, "is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created." *Coffin* v. *United States*, 156 U. S. 432, 459. But that presumption in *Kirby's case* was in effect held in the court below to be of no consequence; for, as to a vital fact which the Government was bound to establish affirma-

tively, he was put upon the defensive almost from the outset of the trial by reason alone of what appeared to have been *said* in another criminal prosecution with which he was not connected and at which he was not entitled to be represented. In other words, the United States having secured the conviction of Wallace, Baxter and King as principal felons, the defendant charged by a separate indictment with a different crime — that of receiving the property in question with knowledge that it was so stolen and with intent to convert it to his own use or gain — was held to be presumptively or *prima facie* guilty so far as the vital fact of the property having been stolen was concerned, as soon as the Government produced the record of such conviction and without its making any proof whatever by witnesses confronting the accused of the existence of such vital fact. We cannot assent to this view. We could not do so without conceding the power of the legislature, when prescribing the effect as evidence of the records and proceedings of courts, to impair the very substance of a right long deemed so essential for the due protection of life and liberty that it is guarded against legislative and judicial action by provisions in the Constitution of the United States and in the constitutions of most if not of all the States composing the Union.

This precise question has never been before this court, and we are not aware of any adjudged case which is in all respects like the present one. But there are adjudications which proceed upon grounds that point to the conclusion reached by us.

A leading case is *Rex* v. *Turner*, 1 Moody's Crown Cases, 347. In that case the prisoner was indicted for feloniously receiving from one Sarah Rich certain goods and chattels theretofore feloniously stolen by her from one Martha Clarke. At the trial before Mr. Justice Patteson it was proposed to prove a confession of Sarah Rich, made before a magistrate in the presence of the prisoner, in which she stated various facts implicating the prisoner and others as well as herself. The evidence was not admitted, but the court admitted other evidence of what Sarah Rich said

respecting herself only. The prisoner was convicted and sentenced. The report of the case proceeds: "Having since learned that a case occurred before Mr. Baron Wood at York, where two persons were indicted together, one for stealing and the other for receiving, in which the principal pleaded guilty and the receiver not guilty, and that Mr. Baron Wood refused to allow the plea of guilty to establish the fact of the stealing by the principal as against the receiver, the learned judge thought it right to submit to the learned judges the question, Whether he was right in admitting the confession of Sarah Rich in the present case. The learned judge thought it right to add that the prisoner, one Taylor, and Sarah Rich had immediately before been tried upon an indictment for burglary, and stealing other property in the house of Mrs. Clarke on the night of the 22d of August; and that Taylor and Rich had been found guilty, but the prisoner had been acquitted, there being no proof of his presence. The learned judge did not pass sentence upon Sarah Rich immediately; but a new jury was called, and the prisoner was tried as a receiver, so that either party might have called her as a witness. In Easter term, 1832, all the judges (except Lord Lyndhurst, C. B., and Taunton, J.) met, and having considered this case, were unanimously of opinion that Sarah Rich's confession was no evidence against the prisoner; and many of them appeared to think that had Sarah Rich been convicted, and the indictment against the prisoner stated, not her conviction, but her guilt, the conviction would not have been any evidence of her guilt, which must have been proved by other means; and the conviction was held wrong." In a later case, *Keable* v. *Payne*, 8 Ad. & Ell. 555, 560, which was an action involving a question as to the admission of certain evidence, and was heard in the Queen's Bench before Lord Denman, Chief Justice, and Littledale, Patteson and Williams, Justices, Mr. Justice Patteson, referring to *Rex* v. *Turner*, above cited, said: "On an indictment for receiving goods feloniously taken, the felony must be proved; and neither a judgment against a felon, nor his admission, would be evidence against the receiver. In such a case I

once admitted evidence of a plea of guilty by the taker; and it was held that I did wrong." A note in Starkie on Evidence p. 367, is to this effect: " In *R.* v. *Turner,* 1 Moo. C. C. 347; *R.* v. *Ratcliffe,* 1 Lew. C. C. 112; *Keable* v. *Payne,* 8 Ad. & E. 560, (35 E. C. L. R. 454,) it is stated that many of the judges (all the judges except two being assembled) were of opinion that the record of the conviction of the principal would not be evidence of the fact, where the indictment against the accessory alleged not the conviction but the guilt of the principal. And on principle it would seem to be evidence only when the indictment alleges the conviction of the principal, and *simply to support that allegation.*"

The leading American case on the question is *Commonwealth* v. *Elisha,* 3 Gray, 460. The indictment was for receiving stolen goods knowing them to have been stolen. The court, speaking by Metcalf, J., said: " This indictment is against the defendant alone, and charges him with having received property stolen by Joseph Elisha and William Gigger, knowing it to have been stolen. It is not averred, nor was it necessary to aver or prove, (Rev. Sts. c. 126, § 24,) that they had been convicted of the theft. But it was necessary to prove their guilt, in order to convict the defendant. Was the record of their conviction on another indictment against them only, upon their several pleas of guilty to a charge of stealing the property, legal evidence, against the defendant, that they did steal it? We think not, either on principle or authority. That conviction was *res inter alios.* The defendant was not a party to the proceedings, and had no opportunity nor right to be heard on the trial. And it is an elementary principle of justice, that one man shall not be affected by another's act or admission, to which he is a stranger. That conviction being also on the confession of the parties, the adjudged cases show that it is not evidence against the defendant. *Rex* v. *Turner,* 1 Mood. C. C. 347, and 1 Lewin's C. C. 119; 1 Greenl. Ev. § 233; Rosc. Crim. Ev. (2d ed.) 50; *The State* v. *Newport,* 4 Harring. (Del.) 567. We express no opinion concerning a case differing in any particular from this, but confine ourselves to the exact

question presented by these exceptions. Our decision is this, and no more: The record of the conviction of a thief, on his plea of guilty to an indictment against him alone for stealing certain property, is not admissible in evidence to prove the theft, on the trial of the receiver of that property, upon an indictment against him alone, which does not aver that the thief has been convicted."

To the same general effect are some of the text-writers. Phillips, in his Treatise on the Law of Evidence, referring to the rule as to the admissibility and effect of verdicts or judgments in prosecutions, says: " A record of conviction of a principal in felony has been admitted in some cases, not of modern date, as evidence against the accessory. *R.* v. *Smith,* Leach Cr. C. 288; *R.* v. *Baldwin,* 3 Camp. 265. This has been supported on the ground of convenience, because the witnesses against the principal might be dead or not to be found, and on the presumption that the proceedings must be taken to be regular, and the guilt of the convicted party to be established. Fost. Disc. iii. c. 2, s. 2, p. 364. But this is not strictly in accordance with the principle respecting the admissibility of verdicts as evidence against third persons. From the report of the recent case of *Rex* v. *Turner,* it seems that a record of conviction of a principal in the crime of stealing, who pleads guilty, would not now be received as evidence of the guilt of the principal against the receivers of the stolen property, or the accessory after the fact; and it is said to be doubtful, whether a record of the conviction of the principal on his plea of not guilty, would be admissible against the accessory. As proof of *the fact of conviction,* the record would be admissible and conclusive, but it seems not to be admissible evidence of the *guilt* of the convict, as against another person charged with being connected with him in crime, the record being in this respect *res inter alios acta.* It is evidence that a certain person, named in the record, was convicted by the jury, but not evidence as against a third person, supposed to have been engaged with him in a particular transaction, as to the *ground* on which the conviction proceeded, namely, that the convict committed the criminal act described in the record."

2 Phillips's Ev. 3d ed. pp. 22-3.    Taylor in his Treatise on
Evidence, after stating that a prisoner is not liable to be af-
fected by the confessions of his accomplices, says : " So strictly
has this rule been enforced, that where a person was indicted
for receiving stolen goods, a confession by the principal that
he was guilty of the theft, was held by all the judges to be no
evidence of that fact as against the receiver (*R.* v. *Turner*) ;
and the decision, it seems, would be the same, if both parties
were indicted together, and the principal were to plead guilty.
(*Id.*) " 1 Taylor's Ev. § 826, 6th ed.

The principle to be deduced from these authorities is in
harmony with the view that one accused of having received
stolen goods with intent to convert them to his own use,
knowing at the time that they were stolen, is not within
the meaning of the Constitution confronted with the wit-
nesses against him when the fact that the goods were stolen
is established simply by the record of another criminal case
with which the accused had no connection and in which he
was not entitled to be represented by counsel.    As heretofore
stated the crime charged against Wallace, Baxter and King
and the crime charged against Kirby were wholly distinct —
none the less so because in each case it was essential that the
Government should prove that the property described was
actually stolen.    The record of the proof of a vital fact in
one prosecution could not be taken as proof in the other of
the existence of the same fact.    The difficulty was not met
when the trial court failed as required by the act of 1875 to
instruct the jury that the record of the conviction of the
principal felons was conclusive evidence of the fact that the
property had been actually stolen, but merely said that such
record made a *prima facie* case as to such fact.    The funda-
mental error in the trial below was to admit in evidence the
record of the conviction of the principal felons as competent
proof for any purpose.    That those persons had been con-
victed was a fact not necessary to be established in the case
against the alleged receiver ; for, under the statute, he could
be prosecuted even if the principal felons had not been tried
or indicted.    As already stated, the effect of the charge was

to enable the Government to put the accused, although shielded by the presumption of innocence, upon the defensive as to a vital fact involved in the charge against him by simply producing the record of the conviction of other parties of a wholly different offence with which the accused had no connection.

It is scarcely necessary to say that to the rule that an accused is entitled to be confronted with witnesses against him the admission of dying declarations is an exception which arises from the necessity of the case. This exception was well established before the adoption of the Constitution, and was not intended to be abrogated. The ground upon which such exception rests is that from the circumstances under which dying declarations are made they are equivalent to the evidence of a living witness upon oath — " the condition of the party who made them being such that every motive to falsehood must be supposed to have been silenced, and the mind to be impelled by the most powerful considerations to tell the truth." *Clyde Mattox* v. *United States*, 146 U. S. 140, 151; Cooley's Const. Lim. 318; 1 Phillips on Ev. c. 7, § 6.

For the reasons stated it must be held that so much of the above act of March 3, 1875, as declares that the judgment of conviction against the principal felons shall be evidence in the prosecution against the receiver that the property of the United States alleged to have been embezzled, stolen or purloined had been embezzled, stolen or purloined, is in violation of the clause of the Constitution of the United States declaring that in all criminal prosecutions the accused shall be confronted with the witnesses against him. Upon this ground the judgment must be reversed and a new trial had in accordance with law. But as the case must go back to the Circuit Court for another trial, it is proper to notice other questions presented by the assignments of error.

The accused contends that the indictment is defective in that it does not allege ownership by the United States of the stolen articles of property at the time they were alleged to have been feloniously received by him. This contention is without merit. The indictment alleges that the articles

described were the property of the United States when they were feloniously stolen on the 7th day of June, 1896, and that the defendant only two days thereafter, on the 9th day of June, 1896, "the postage stamps aforesaid so as aforesaid feloniously stolen, taken and carried away, feloniously did receive and have in his possession, with intent then and there to convert the same to his own use or gain, the said Joe Kirby then and there well knowing the said postage stamps to have been theretofore feloniously stolen, taken and carried away." The stamps alleged to have been feloniously received by the accused on the 9th day of June are thus alleged to have been the same that were stolen from the United States two days previously. The larceny did not change the ownership, and it must be taken that the United States had not regained possession of the stamps before they were received by Kirby, and that the indictment charges that they were out of the possession of the United States and stolen property when they came to the hands of the accused.

Another contention by the accused is that the indictment was fatally defective in not stating from whom the defendant received the stamps. This contention is apparently supported by some adjudications, as in *State* v. *Ives*, 13 Iredell, 338. But upon a careful reading of the opinion in that case it will be found that the judgment rests upon the ground that the statute of North Carolina, taken from an old English statute, made the receiver of stolen goods strictly an accessory and contemplated the case of the goods being received from the person who stole them. As already stated the act of Congress upon which the present indictment rests makes the receiving of stolen property of the United States with the intent by the receiver to convert it to his own use or gain, he knowing it to have been stolen, a distinct, substantive felony, for which he can be tried either before or after the conviction of the principal felon, or whether the latter is tried or not. Under such a statute the person who stole the property might be pardoned, and yet the receiver could be indicted and convicted of the crime committed by him. Bishop in his New Criminal Procedure says that while some American cases have held it to be

necessary in an indictment against the receiver of stolen goods to state from whom he received the goods, "commonly, in England and in numbers of our States, the indictment does not aver from whom the stolen goods were received." Vol. 2, § 983. By an English statute, 7 & 8 Geo. IV, June 21, 1827, c. 29, § 54, it was enacted that "if any person shall receive any chattel, money, valuable security or other property whatsoever, the stealing or taking whereof shall amount to a felony, either at common law or by virtue of this act, such person knowing the same to have been feloniously stolen or taken, every such receiver shall be guilty of felony, and may be indicted and convicted either as an accessory after the fact, or for a substantive felony, and in the latter case, whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice," etc. Under that statute a receiver of stolen goods was indicted. It was objected that one of the counts did not state the name of the principal, or that he was unknown. Tindall, C. J., said: "It will do. The offence created by the act of Parliament is not the receiving stolen goods from any particular person, but receiving them knowing them to have been stolen. The question therefore will be, whether the goods are stolen, and whether the prisoner received them knowing them to have been stolen. Your objection is founded on the too particular form of the indictment. The statute makes the receiving of goods, knowing them to have been stolen, the offence." *Rex* v. *Jervis*, 6 C. & P. 156; 2 Russell on Crimes, 6th ed. 436. In *State* v. *Hazard*, 2 R. I. 474, an indictment charging the accused with fraudulently receiving stolen goods, knowing them to have been stolen, was held to be good, although it did not set forth the name of any person from whom the goods were received, nor that they were received from some person or persons unknown to the grand jurors. We therefore think that the objection that the indictment does not show from whom the accused received the stamps, nor state that the name of such person was unknown to the grand jurors, is not well taken. If the stamps were in fact stolen from the United States, and if they were received by the

accused,· no matter from whom, with the intent to convert them to his own use or gain, and knowing that they had been stolen from the United States, he could be found guilty of the crime charged even if it were not shown by the evidence from whom he received the stamps. This rule cannot work injustice nor deprive the accused of any substantial right. If it appears at the trial to be essential in the preparation of his defence that he should know the name of the person from whom the Government expected to prove that he received the stolen property, it would be in the power of the court to require the prosecution to give a bill of particulars. *Coffin* v. *United States,* 156 U. S. 432, 452; *Rosen* v. *United States,* 161 U. S. 29, 35; *Commonwealth* v. *Giles,* 1 Gray, 466; Rosc. Crim. Ev. 6th ed. 178, 179, 420.

> *The judgment is reversed, and the case is remanded with directions for a new trial and for further proceedings consistent with law.*

MR. JUSTICE BROWN and MR. JUSTICE McKENNA dissented.

MR. JUSTICE BREWER did not participate in the decision of this case.