Ray H. TEEL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19245.

United States Court of Appeals
Eighth Circuit.

Feb. 28, 1969.

William F. Brown, Sedalia, Mo., for appellant, James T. Buckley, Sedalia, Mo., on the brief with Wm. F. Brown, Sedalia, Mo.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee, Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., was on the brief with Anthony P. Nugent, Jr., Kansas City, Mo.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

This appeal is from the judgment of conviction entered on the jury verdict finding appellant guilty under Count VI of an indictment which charged that on or about August 25, 1964, he received and retained with intent to convert to his own use personal property which had been stolen from the United States Government, knowing it to have been stolen, in violation of 18 U.S.C. § 641.[1]

1. § 641 provides in pertinent part that whoever steals anything of value of the

United States or whoever receives, conceals or retains the same with intent to

Additional defendants in the multiple count indictment were John Howard Johnson and Wilbur Watt. Both were convicted (1) of conspiring to receive and (2) of unlawfully selling stolen government property. Watt was found guilty of selling the government property that is the subject of appellant's conviction, but Johnson was acquitted of stealing that property.[2]

Appellant contends that the evidence was insufficient to warrant submission of the case to the jury, and that the court erred in failing to grant his timely motion for a judgment of acquittal. He argues that a review of all of the evidence reveals that there was no proof whatever upon which any jury could reasonably predicate a finding that he knew or had any reason to believe that the items he acquired, which were shown to have been government property, had, in fact, been stolen.

■ In resolving this issue the evidence must be viewed in the light most favorable to the Government. Smith v. United States, 407 F.2d 356 (8th Cir., Feb., 1969); Latham v. United States, 407 F.2d 1 (8th Cir., Feb., 1969).

By way of summary, the Government's evidence established that Johnson, a fireman who worked at Whiteman Air Force Base, sold building materials and appliances to various personnel in the vicinity of Knob Noster, Missouri, during the fall of 1964, and that he sold some of these items to Watt, who had been stationed at Whiteman as a member of the Air Force until his resignation in 1963. Thereafter, Watt sold a portion of the same items to appellant.

In 1965, J. Robert Howard, an F.B.I. agent, began an investigation of the alleged theft of materials, including plywood and water heaters, from the air base. He talked with appellant in October, 1965. Appellant informed Howard on this occasion that he had purchased plywood, roofing tile, heaters and paint from Watt but that he was unable to recall his first name; that he believed Watt was a salesman for a building materials company and did not question the bona fides of the transactions; that he knew Watt only casually. However, Watt's former wife testified that Watt and appellant actually had been social acquaintances for several years.

Appellant authorized a search of his garage, and the plywood involved in the charge was discovered. In a later interview, appellant admitted to Howard that he had more plywood and a heater in a shed located behind his garage.

The amount paid by appellant to Watt, in large part by cash, was much less than the market price of the property. He did not obtain receipts for the cash payments. On three occasions, however, appellant paid by check, one of which bore the notation "labor," allegedly placed there at Watt's request. This, despite the fact that Watt denied ever having worked for appellant.

In Watt's interview with the F.B.I. agent, he denied having sold materials to appellant. He later admitted that he and Johnson had made sales to appellant. When Johnson was first interviewed, he stated that he purchased materials from unknown persons in midnight transactions along the highway. He also admitted having delivered different articles to Watt on different occasions during a period of about a year. In this connection Watt asserted that Johnson informed him that he obtained the materials from a private contractor at the air base. In contradiction to appellant's disavowal of his dealings with Johnson, witness D. Everts testified that appellant used his shed for storage of plywood delivered by

convert it to his own use or gain, knowing it to have been stolen or purloined, shall be fined not more than $10,000 or imprisoned not more than 10 years, or both.

2. Watt was committed to the Medical Center for Prisoners at Springfield, Missouri. Johnson and appellant were fined $750 each and were placed on probation for three years. Neither Watt nor Johnson appealed.

Johnson. Everts further stated that appellant informed him that he had purchased the materials from Johnson. It was stipulated that plywood having imprinted thereon government stock numbers, which was found in appellant's garage, was on inventory at the base in the years 1964 and 1965, and that the heater of the same make and serial number found in appellant's possession was received at the base on August 6, 1964 —less than twenty days before appellant received the heater on or about August 25.[3]

Colonel O'Hallaron, who was base supply officer at Whiteman when the thefts were discovered, testified that the redistribution and marketing center would not have sold new heaters to the public.

Appellant waived the appearance of a Government witness and stipulated that he would have testified that no new plywood had been sold by the Government during the pertinent period of time in the 7-state area that includes Whiteman Air Force Base. Although an inventory of November, 1965, by Colonel O'Hallaron showed a shortage of only 18 sheets of plywood, both the Colonel and the Chief of Planning of Base Civil Engineers testified that it was possible for property to be taken without a shortage appearing on the books of the base supply office.

In connection with his contention that there was no evidence to support the jury's finding that he knowingly received stolen goods, appellant makes the underlying argument that he was un-

fairly prejudiced by the court's instruction to the effect that possession of recently stolen property, if not satisfactorily explained, is a circumstance from which the jury may infer that the possessor knew that the property was stolen. That the instruction correctly declared the law is not disputed. Sewell v. United States, 406 F.2d 1289 (8th Cir., Feb. 1969); Aron v. United States, 382 F.2d 965, 969–970 (8th Cir. 1967). The controversy is whether there was evidence to support it. Appellant implies that the instruction should not have been given because the evidence did not establish the length of time the property had been stolen. In this regard, Judge Oliver informed the jury that the "term 'recently' is a relative term, has no fixed, precise meaning of time. Whether property may be considered as recently stolen depends upon the nature of the property, from all the facts and circumstances which you find [have been] established beyond reasonable doubt from the evidence in this case." See Lee v. United States, 363 F.2d 469 at 475 (8th Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 323, 17 L.Ed.2d 227 (1966); Aron v. United States, supra 382 F.2d at 971– 972.[4]

In deciding whether appellant was prejudiced by the instruction we must consider:

"the length of possession along with all the other facts and circumstances, * * * the type and kind of property, the amount or volume thereof, the ease or difficulty with which it may

---

3. Appellant erroneously asserts in his brief that the heater in question was received by the air base in April, 1964. The testimony relied upon relates to the two Kee heaters found in appellant's possession. During the trial these items were stricken from Count VI of the indictment, leaving only the Gaffers and Sattler brand heater, serial number 34760. As we have seen, it was stipulated that this heater was received by the air base on August 6, 1964, about twenty days before it was discovered in the possession of appellant.

4. In Lee, supra, we held possession of securities five months after the burglary could give rise to the inference. There

are cases running from three months to eleven months where the doctrine of possession of recently stolen property was applied. 363 F.2d at 475 n. 2. Here, there can be no doubt that the heater had been stolen for less than one month when appellant received it. And there is sufficient evidence from which the jury could have found that the plywood was stolen within a few months of its receipt by appellant. "Whether possession is sufficiently 'recent' to justify an inference of guilt is a question of fact solely for the jury." Lee v. United States, supra at 475.

be assimilated into legitimate trade channels, including the circumstances under which the property is alleged to have been acquired." Aron v. United States, *supra* at 971.

■ Although plywood and water heaters normally may be considered as items "easily assimilated into legitimate trade channels," the record discloses that new, government-marked items of this nature were not introduced into trade by the government in the Whiteman area. The shady nature of the transactions becomes even more apparent when we consider the type and amount of goods involved, all of which bore evidence of government ownership. We forego a more extensive review of the evidence. Beyond doubt it was sufficient to establish the essential elements of the offense and likewise warranted submission of the instruction complained of.

■ Appellant also contends that since Johnson was found not guilty of stealing the property involved here he cannot be convicted of receiving "stolen property." The weakness of this contention is readily apparent. It is predicated upon the false premise that merely because the Government was unable to convince the jury that Johnson had committed the theft it necessarily follows that appellant cannot be convicted of receiving the property. We are cited no authority holding that the conviction of the thief is a prerequisite to a conviction of another for receiving the stolen property. By the plain language of the statute the elements of the offense are, receipt of stolen goods with knowledge that they had been stolen and with intent to convert to the possessor's own use. Here we have substantial evidence to establish both elements.

Conceivably, there are situations where the Government, for valid reasons, is unable to apprehend the person who purloined the property,[5] or, as here, the prosecution may fail in its efforts to convict the person charged with the theft. These circumstances are not fatal to a prosecution and conviction of the distinct substantive offense of receiving stolen property with the requisite knowledge and intent.[6] The only source of support for appellant's contention is a general statement in 76 C.J.S. Receiving Stolen Goods § 11 (1952). That statement is apparently based solely upon an 1890 Louisiana case,[7] the holding of which has been diluted by a later case.[8] Significantly, appellant's own source states the general rule:

"[U]nder modern statutes generally the receiving of stolen property is a distinct, substantive offense, and in most jurisdictions where such statutes have been enacted it is not necessary to a conviction of the offense of receiving or concealing stolen property to allege * * * or to show that the thief has been convicted or that he is amenable to justice." 76 C.J.S. Receiving Stolen Goods § 11 at p. 16 (1952).

By way of conclusion we are convinced of the sufficiency of the evidence, that appellant received a fair trial and that the judgment should be and is affirmed.

5. See, *e. g.*, Feinstein v. United States, 390 F.2d 50 (8th Cir. 1968) and Aron v. United States, *supra*.

6. See Kirby v. United States, 174 U.S. 47, 62, 19 S.Ct. 574, 43 L.Ed. 890 (1899).

7. State v. Antoine, 42 La.Ann. 945, 8 So. 529 (1890).

8. State v. Ugarte, 176 La. 54, 145 So. 266 (1932), where the court stated: "To constitute the offense, it is not necessary that the goods be received from the thief or from any particular person; it being immaterial from whom they were received. The offense is established if it be shown that the goods were received from any one, if the other essential elements are present." Id. at 268.