**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George J. KOGER, Defendant-Appellant.**

**No. 80–1098.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1980.

Decided April 24, 1981.

Stephen H. Pugh, Chicago, Ill., for defendant-appellant.

Douglas J. Miller, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Circuit Judge, SKELTON, Senior Judge,* and CUDAHY, Circuit Judge.

SKELTON, Senior Judge.

Defendant-appellant George J. Koger (Koger) was indicted on June 19, 1979, in a three-count indictment for possession of three checks in the amounts of $1,008.06, $561.80 and $107,460.12, respectively, that had been stolen from the mail in violation of Title 18, U.S.C. § 1708. He was arraigned on June 26, 1979, and, after pleading not guilty, he was tried on October 15, 1979, and convicted by a jury on October 19, 1979, in the United States District Court for the Northern District of Illinois, Eastern Division. He was sentenced on December 7, 1979, to imprisonment for a term of 3 years on Counts One, Two and Three, to run concurrently, with the further provision

that he be confined for the first six months and that the remainder of the sentence be suspended and that he be placed on probation. Koger appealed his conviction to this court and has presented the following two issues for review:

 I. Whether the trial court properly denied defendant's motion to dismiss the indictment in which motion he alleged a violation of the Speedy Trial Act.

 II. Whether the trial court properly allowed into evidence the judgment of conviction and commitment order (Government Exhibit 51), and Notice of Release from incarceration in the Metropolitan Correctional Center (Government Exhibit 52), and evidence of firing from the post office of a woman named Stephanie Green who allegedly delivered the checks charged in the incident to the defendant.

After reviewing the record, considering the briefs, and hearing oral argument, we hold on the first issue that the Speedy Trial Act was violated but sanctions are not appropriate in this case. On the second issue, we hold that the trial court erred in allowing Government Exhibits 51 and 52 into evidence and reverse and remand the case to the district court for a new trial.

## THE SPEEDY TRIAL ACT ISSUE

Koger was tried within 118 days of his indictment and within 111 days of his arraignment. The trial judge ruled that 7 days were excludable time. This resulted in 104 days from arraignment to trial. Koger filed a motion to dismiss the indictment the day before his trial on the ground that he had not been tried within 70 days from the date of his arraignment as required by the Speedy Trial Act (The Act), 18 U.S.C. § 3161. He alleged in such motion and contends in this appeal that the failure of the court to comply with the above Section of the Act required the district court to

---

* The Honorable Byron G. Skelton, Senior Judge of the United States Court of Claims, sitting by designation.

dismiss his indictment because of the provisions of Section 3162 of the Act. The trial judge in the exercise of his discretion denied the motion.

The Judicial Conference of the United States granted a suspension of the final Speedy Trial Act limit of 60 days—a limit which would have applied to cases begun after July 1, 1979. The suspension did not purport to affect cases begun under the standard for the previous phase-in year (80 days), 18 U.S.C. § 3161(g) (1974), or the more stringent standard for the previous phase-in year adopted by the local district court plan (70 days). United States District Court for the Northern District of Illinois Plan for Achieving the Prompt Disposition of Criminal Cases During the Period 1 July 1976 through 30 June 1979, Part A, § 5(a)(4) (the "Interim Plan").

Even if the suspension purported to apply to either of the more relevant 80-day or 70-day time limits, the suspension could not be applied to this defendant. Any suspension must comply with the Congressionally enacted requirements of the Speedy Trial Act itself. More specifically, Section 3174(b), under which the suspension with which we are concerned was granted,[1] provides that the Judicial Conference may grant a suspension of the time limits of up to one year "for the trial of cases for which indictments are filed during such period [of suspension]." 18 U.S.C. § 3174(b) (1974). In the instant case, the suspension was approved for one year beginning June 20, 1979. The defendant was indicted, however, on June 19, 1979. Since the defendant was indicted before June 20, 1979, i. e., prior to the period designated for the suspension,

the suspension of the time limits did not apply to his case. Therefore, the defendant's rights under the Speedy Trial Act were violated because he was not tried within the applicable 70-day arraignment-to-trial time limit.[2] Although the government argues that there was sufficient excludable time to reduce the 111-day period from arraignment-to-trial to a period within the 70-day limit, Section 3161(h)(8)(A) requires specific findings by the trial court as to any excludable time. The district court, however, made such findings only with respect to 7 days, leaving an arraignment-to-trial period of 104 days.

 But, this does not end the matter because the defendant had no right to invoke the mandatory dismissal sanctions of Section 3162 of the Act; those sanctions applied only to cases commenced after July 1, 1979. *See United States v. Watson*, 623 F.2d 1198, 1202 n.8 (7th Cir. 1980) (dicta). Here the defendant was indicted on June 19, 1979, and the mandatory dismissal sanctions were not available.[3] In the light of this, the only sanction available to the defendant would have been the dismissal of the case *at the discretion of the district court.* See Fed.R.Crim.P. 48(b). The district court exercised its discretion not to impose any sanction, however, and that decision was not an abuse of the court's discretion.

### The Evidence Issue

Appellant Koger complains that during the trial the district court committed error in admitting into evidence certain cross-examination testimony of Koger, and also

---

1. The letter authorizing the suspension expressly states that the suspension was granted pursuant to Section 3174. Appellant's Appendix at 1. The Government concedes that the suspension was granted under Section 3174, Appellee's Brief at 18–19, but argues that the local district plan somehow altered the terms of any suspension. Nothing in the plan pertains to this question, however, and it is in any event doubtful that a local district plan could change the suspension provisions of Section 3174 without explicit Congressional authorization.

2. The 70-day limit to which we refer in the text is that found in the Interim Plan for the Northern District of Illinois, Part A, § 5(a)(4), which adopted more stringent standards than the 80-day limit applicable under the relevant phase-in period of the Speedy Trial Act, 18 U.S.C. § 3161(g) (1974).

3. We thus find it unnecessary to evaluate the Congressional action postponing the effective date of the sanctions under either the savings clause, 1 U.S.C. § 109 (1976), or the constitutional prohibition against ex post facto laws. U.S. Const. Art. I, § 9, cl. 3.

Government's Exhibits 51 and 52, which are described below. It is necessary to briefly review this evidence in order to dispose of these questions.

Koger took the stand and testified in his own behalf. He admitted that he sometimes used the name of George Reno Evans instead of George J. Koger. He said that he maintained a joint bank account with his wife, Margret A. Koger. He testified that he had worked at the main post office since 1973 as a letter sorting machine operator and had never been convicted of any crime. He said that he had not taken the checks from the post office and that he did not know that they were stolen. He testified that he had obtained the checks from a long time friend named Stephanie Green who brought them to his house. His testimony showed further that all three checks were endorsed when he received them and he wrote the second endorsements of Margret A. Koger on them. He deposited two of the checks himself and had Green deposit the other one. All three checks were paid. He had known Green since she was seven years of age when they were in school together and her mother was their teacher. They both worked together at the post office in 1976 where he saw her daily. She lost her job in 1977 and did not have a place to stay, so he rented her an apartment for $150.00 per month in a building he owned and where he resided with his wife. She moved into the apartment around Thanksgiving, 1977, and lived there approximately nine months. Koger testified that he could not be certain that she was living in the apartment in July and August, 1978, although he thought she moved from the building in November, 1978. He asked her for 6 months back rent in the sum of $600.00 on or about March 30, 1979. A few days later she gave him the check for $1,008.06 (Government's Exhibit 2). She said she did not have a bank account and could not cash it. He deposited it and when it cleared he kept $600.00 for back rent and gave Green $400.00 in cash. On April 23, 1979, Green gave Koger a second check in the sum of $561.80 (Government's Exhibit 5). He deposited the check and later gave Green the

money in cash. On April 28, 1979, she gave him a third check in the sum of $107,460.12 (Government's Exhibit 8) stating that they could use it to go into business together. He asked her to deposit it in his account as he had to go to work and she did so. Later, he drew out $6,000.00. He never saw Green again and did not know where she lived.

On cross-examination Koger testified that Green had lost her job because she and another person had been going to a store and using credit cards that were not theirs. He said he did not know whether or not she had ever been convicted in a criminal proceeding. The prosecutor then introduced the three checks described above into evidence and proved that they had been stolen from the United States mail by an unknown person. The prosecutor then introduced Exhibit 51 into evidence, which was a record of conviction of Stephanie Green on June 21, 1978, for embezzling mail while an employee of the United States Postal Service, and Exhibit 52, which was a record showing that Stephanie Green has been incarcerated from July 17, 1978, to August 25, 1978, in the Metropolitan Correctional Center. Koger objected strenuously to the introduction of these exhibits. The prosecutor stated to the court that they were being offered to impeach Koger and to impeach Green. The appellant objected that they were hearsay and irrelevant and highly prejudicial. They impeached neither him nor Green. Koger argued that their introduction thus violated Federal Rules of Evidence 403 and 803(22). The court overruled Koger's objections and the exhibits were admitted into evidence and were shown to the jury, but they were not sent to the jury room. No limiting instructions were given by the court at the time they were introduced and shown to the jury. Such limiting instructions regarding the exhibits were not given until the following day when they were included in one paragraph of the court's eleven page general charge to the jury as follows:

> "Government's Exhibits Nos. 51 and 52 were received for the limited purpose of attacking the credibility of defendant's

testimony and should not be considered by you for any other purpose."

Koger took the stand and testified on re-direct examination that he could not say whether he saw Green at all in August, 1978. He testified further that the first time he knew she had been convicted or served time in jail as shown by Government's Exhibits 51 and 52 was the day before during his own trial.

It should be pointed out that the Government never proved by direct evidence that Koger knew that the checks were stolen, nor that he knew that Green had been convicted and had served time in jail during July and August, 1978, when she was a tenant in a building owned by him. There was no proof that Green or Koger stole the checks, nor was the identity of the thief ever shown. Nevertheless, the jury convicted Koger for knowingly possessing the stolen checks as charged in the indictment.

We conclude that the court erred in admitting Government's Exhibits 51 and 52 into evidence, and that they could have caused the jury to convict Koger. The record shows that the trial judge himself stated to the attorneys in the case that these exhibits were "really devastating." We agree that they were devastating, as far as Kroger was concerned. It will be remembered that the Government introduced them to impeach Koger. They did not and could not impeach Koger, because he testified he did not know Green had been convicted. Therefore, the exhibits regarding the conviction and jail term of a third party (Green) for an offense not shown to have

anything to do with the charges against Koger were completely irrelevant and violated Rules 401 and 402 of the Federal Rules of Evidence, and, therefore, were inadmissible.[4] Even if the exhibits were relevant, and we do not think they were, their probative value (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. In other words, the exhibits were before the jury for all purposes and without any limiting instructions for almost 24 hours. They could have speculated during that period of time, as well as afterward, that Green stole the checks and gave them to Koger, and that because Green was convicted and served time for stealing the checks, Koger knew they were stolen because of Green's conviction for that offense, which he was bound to know about because of her absence from her apartment during the period of incarceration. Such procedure is highly speculative and theoretical at best and without proof and should not be allowed in a criminal trial. It violates Rule 403 and other Rules of Evidence and is highly prejudicial,[5] and violates the rule of presumption of innocence.

■ The record shows that the trial judge was concerned about his allowing Exhibits 51 and 52 into evidence. After their introduction he told the attorneys:

"I have not been pleased with letting these exhibits go in generally without limiting their use. So I will tell the jury that they are to consider Government's Exhibits 51 and 52 only as they affect the believability or credibility of Mr. Koger's testimony."

4. Rules 401 and 402 provide:
Rule 401. Definition of "Relevant Evidence".
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible.
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by

the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

5. Rule 403 states:
Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Of course, at that time, the exhibits were before the jury for all purposes and the damage to Koger had already been done. Also, it is not logical to conclude that Green's conviction and jail service could affect Koger's credibility or believability when he did not even know about them. This is going too far.

The trial judge's concern about the admission of Exhibits 51 and 52 into evidence is also shown by the fact that he wrote a memorandum regarding their admissibility after the jurors had returned their guilty verdict. This memo was for all practical purposes a post-conviction brief that attempted to support the judge's action in allowing the exhibits to be introduced. In this memo, the judge stated that the exhibits were relevant under Rule 401 as tending to rebut the defendant's professed intent and state of mind at the time he received the checks. We do not agree. Koger did not know about Green's conviction and incarceration and, therefore, such events could not have affected his state of mind nor intent when he received the checks.

The trial judge also stated in his memo that the exhibits were admissible under Rule 803(8) because they were public records. This is unpersuasive and wide of the mark. All criminal convictions are public records, but that does not make them admissible in a different criminal proceeding as here where there is no nexus between them.

Finally, the trial judge stated in his memo that the exhibits were not rendered inadmissible by Rule 803(22) because they were "not offered to prove any fact essential to sustain the prior judgment of conviction."[6] This statement appears to be inconsistent with another paragraph of the judge's memo which says:

"They tend to prove Stephanie Green had been convicted of theft from the mail and had been incarcerated in the Metropolitan Correctional Center for 90 [sic 45] days during the time she resided in the defendant's building."

In our opinion, the exhibits not only "tended to prove" such conviction and incarceration, but also they did in fact prove the occurrence of such events. It appears from the facts and circumstances of the case that they were introduced for that purpose notwithstanding the offering statements of the prosecutor. This is shown by the logical conclusion that if the exhibits did not prove Green's conviction and incarceration, then there was no proof of the same before the court, and, therefore, they could not have impeached the credibility of Koger, and there would not have been any reason for the court to give his limiting charge regarding them.

Furthermore, Koger testified that he did not know of Green's conviction and incarceration until "yesterday" (when Exhibits 51 and 52 were introduced). Therefore, it is clear that the exhibits proved the conviction and incarceration to Koger, and, logically, they made the same proof to the jury as well as to the trial judge. Otherwise, the judge would not have felt it necessary to give the limiting instruction nor to write his post-conviction memo.

The Notes of the Advisory Committee on Proposed Rules state with regard to Rule 803(22):

"While these rules do not in general purport to resolve constitutional issues, they have in general been drafted with a view to avoiding collision with constitutional principles. Consequently, the exception does not include evidence of the

---

**6.** Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(22) Judgment of previous conviction. Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person

guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

conviction of a third person, offered against the accused in a criminal prosecution to prove any fact essential to sustain the judgment of conviction. A contrary position would seem clearly to violate the right of confrontation. *Kirby v. United States*, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899), error to convict of possessing stolen postage stamps with the only evidence of theft being the record of conviction of the thieves." Note to Paragraph (22), Rule 803, Title 28, Rules of Evidence, U.S.C.A. at p. 594.

The introduction into evidence of Exhibits 51 and 52 deprived Koger of the right of confrontation of witnesses in violation of the Sixth Amendment to the Constitution, as indicated in the above-quoted advisory note. The Supreme Court held in *Kirby v. United States*, 174 U.S. 49, 19 S.Ct. 574, 43 L.Ed. 890 (1899), which was a case wherein the accused was being prosecuted for receiving and possessing stolen property, as in our case, that it was improper to allow the introduction of evidence of the conviction of the thieves in a separate non-related proceeding, and that such evidence violated the accused's right of confrontation of witnesses under the Constitution. In that case the court said:

"The principle to be deduced from these authorities is in harmony with the view that one accused of having received stolen goods with intent to convert them to his own use, knowing at the time that they were stolen, is not within the meaning of the Constitution, confronted with the witnesses against him when the fact that the goods were stolen is established simply by the record of another criminal case with which the accused had no connection and in which he was not entitled to be represented by counsel.

\* \* \* \* \* \*

The fundamental error in the trial below was to admit in evidence the record of the conviction of the principal felons as competent proof for any purpose. That those persons had been convicted was a fact not necessary to be established in the case against the alleged receiver; for under the statute he could be prosecuted even if the principal felons had not been tried or indicted. As already stated, the effect of the charge was to enable the government to put the accused, although shielded by the presumption of innocence, upon the defensive as to a vital fact involved in the charge against him by simply producing the record of conviction of other parties of a wholly different offense with which the accused had no connection." 174 U.S. 60–61, 19 S.Ct. 579.

The *Kirby* case had never been overruled and has been cited and followed many times. We adhere to the principles therein stated.

We are convinced that the introduction of the exhibits into evidence subjected Koger to devastating and unfair prejudice, confused the issues and perhaps misled the jury. It could be argued that this phase of the case was presented and tried, as stated by the late Chief Judge Hutcheson of the Fifth Circuit Court of Appeals in *Olinger v. Commissioner of Internal Revenue*, 234 F.2d 823, 824 (1956), too much on the theory of "Give a dog an ill name and hang him." [7]

We hold that the Speedy Trial Act was violated but sanctions are not appropriate in this case. We hold further that the introduction into evidence of Government's Exhibits 51 and 52 was error and the judgment of the trial court is reversed and the case is remanded for a new trial.

Reversed.

---

7. *No disrespect for the trial judge is intended.* He obviously realized the error that had been made and did what he could to correct it.