## In re STEVENSON.

(District Court, D. Delaware. May 16, 1899.)

### No. 5.

1. BANKRUPTCY—TIME OF FILING PETITION.

The four months after the commission of an act of bankruptcy within which, under the provisions of the bankrupt act of July 1, 1898, a petition in involuntary bankruptcy must be filed, are to be so computed as to exclude the day on which such act was committed; hence, where the act of bankruptcy was committed October 20, 1898, the petition could properly have been filed February 20, 1899.

**2. SAME—DUPLICATE.**

The bankrupt act requires the filing within the specified period of four months of a petition in duplicate, one copy for the clerk and the other for service on the alleged bankrupt; and where a petitioner has within that period filed only one copy of the petition, the court has no authority after the expiration of such period to permit the filing of a second copy.

**3. SAME—TIME OF FILING DUPLICATE.**

The various provisions of the bankrupt act clearly disclose a legislative intent that proceedings in bankruptcy shall be conducted and closed with all reasonable expedition; and, while it is true that a petition may be filed at such time on the last day of the period of limitation as to render impossible either the service or issuance of process within that period, it was nevertheless the manifest intention of congress that the duplicate copy for service should be filed within that period, ready to be served with all convenient speed.

**4. SAME.**

Rule 11 in bankruptcy, prescribed by the supreme court, authorizes the court to allow corrections to be made of errors, insufficiencies and uncertainty in the petition or schedules, but not practically to repeal the legislative declaration that petitions must be filed in duplicate within the four months specified.

**5. SAME—CLERK'S DOCKET.**

Rule 1 in bankruptcy provides that the clerk's docket shall contain a memorandum of the filing of the petition, but does not mention a copy of the petition; and, as the petition is to be filed in duplicate, the docket should show such filing.

(Syllabus by the Court.)

In Bankruptcy.

C. W. M. Hewlin and Charles G. Rumford, for petitioning creditors. Austin Harrington and William S. Hilles, for bankrupt.

BRADFORD, District Judge. This is a motion to dismiss the petition in involuntary bankruptcy of The Importers and Traders National Bank of New York praying that Alfred P. Stevenson be adjudged a bankrupt. The motion as filed assigned four grounds, two of which were abandoned on the hearing. The remaining grounds are as follows:

"1. Because the petition in said cause was not filed within four months after the commission of the alleged act of bankruptcy, as required by law.
2. Because the petition filed in this cause was not filed in duplicate."

The petition was filed February 20, 1899, but not in duplicate, and disclosed that the act therein charged as an act of bankruptcy was committed October 20, 1898; consisting of the confession by the respondent of certain judgments in the Superior court of Delaware for New Castle County. On March 2, 1899, the counsel for the petitioner applied for and obtained leave of the court to file nunc pro tunc a duplicate creditor's petition. The court, while not satisfied as to the propriety of allowing the duplicate to be filed at that time, deemed it just that the petitioner should not be deprived of any right to which it might be entitled through such filing; the respondent having full opportunity by a proper proceeding thereafter to raise the point and have it determined. The questions involved in the motion have now been fully argued and are fairly before the court for decision. They are in substance, first, whether a petition in involuntary bank-

ruptcy, in which the alleged act of bankruptcy consisted of the confession of judgment by the respondent October 20, 1898, could legally be filed February 20, 1899; and, second, whether a duplicate copy of the petition could legally be filed after the expiration of the four months limited by the bankrupt act, if a single copy of the petition was filed within that period. No question as to the sufficiency of the petition in other respects is before the court for consideration at this time. Section 3, subd. b, of the act provides as follows:

"A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay, or defraud his creditors or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property unless the petitioning creditors have received actual notice of such transfer or assignment."

The time for filing the petition did not expire before the expiration of the period of four calendar months from the date of the confession of judgment. Did or did not that period include February 20, 1899? If, in the computation of time, October 20, 1898, must be excluded, a petition could legally have been filed February 20, 1899, being the last day of the four months. There has been much conflict of opinion on the question whether in the computation of time the terminus a quo should be included in, or excluded from, the period within which by law an act must or must not be done. The decisions on this point have largely been controlled by considerations of hardship or substantial justice as disclosed in the circumstances of the several cases. The general rule, while subject to some exceptions not bearing on the present case, now is that in the absence of a provision to the contrary the terminus a quo should not be included in such period. The doctrine of many of the early cases was otherwise. Thus in Arnold v. U. S., 9 Cranch, 104, the court said:

"It is a general rule that where the computation is to be made from an act done, the day on which the act is done is to be included."

And in Griffith v. Bogert, 18 How. 158, where it appeared that letters of administration were granted on the estate of a deceased debtor November 1, 1819, and by statute an execution sale of the lands of such debtor was prohibited until after the expiration of eighteen months from the date of the letters, the court, applying the same doctrine, held that an execution sale of such lands May 1, 1821, was valid. The court, however, said:

"If the statute in question were one of limitation, whereby the remedy of the creditor would have been lost, unless execution had issued and sale been made within the eighteen months, probably a different construction might have prevailed."

In later cases the earlier doctrine of the Supreme Court as to the inclusion of the terminus a quo seems to have been materially departed from, if not abandoned. In Sheets v. Selden's Lessee, 2 Wall. 177, 190, the court said:

"The general current of the modern authorities on the interpretation of contracts, and also of statutes, where time is to be computed from a particular day or a particular event, as when an act is to be performed within a specified period from or after a day named, is to exclude the day thus designated, and to include the last day of the specified period. 'When the period allowed for doing an act,' says Mr. Chief Justice Bronson, 'is to be reckoned from the making of a contract, or the happening of any other event, the day on which the event happened may be regarded as an entirety, or a point of time; and so be excluded from the computation.'"

In Best v. Polk, 18 Wall. 112, 119, the court said:

"Another objection is taken to the certificate of Edmondson, on the ground that when it was given his term of office had expired. This objection cannot be sustained, for the certificate bears date the 2d March, 1849, and he was commissioned to hold the office of Register 'during the term of four years from the 2d day of March, 1845.' The word 'from' always excludes the day of date."

So, in Cattle Co. v. Becker, 147 U. S. 47, 13 Sup. Ct. 217, the rule of exclusion of the terminus a quo was applied to a statutory provision in Texas forbidding an application for the purchase of lands, set apart for the benefit of the school fund, to be entertained "within ninety days from the date of the record" of a former application for the purchase of the same lands. The present case does not involve any question of penalty or forfeiture, or possess any other feature requiring the terminus a quo to be included in the computation of time. In Dutcher v. Wright, 94 U. S. 553, it was held that under the bankrupt act of March 2, 1867, in computing the four months prior to the filing of a petition in bankruptcy, in which period any assignment by an insolvent debtor of his property for the purpose of giving a preference to a creditor was void, the day of such filing must be excluded. Section 35 of that act, now embodied in part in section 5128 of the revised statutes, provided, among other things, that if any person being insolvent, within four months before the filing of a petition in bankruptcy by or against him, with a view to give a preference to any creditor, made any assignment, transfer or conveyance of any part of his property, the person receiving the same having reasonable cause to believe that the person making the same was insolvent and that such assignment, transfer or conveyance was made in fraud of the provisions of that act, the same should be void, and the assignee might recover the property or its value from the person receiving or to be benefited by such assignment, transfer or conveyance. Section 48 of that act, now embodied in section 5013 of the revised statutes, contained the following provision:

"And in all cases in which any particular number of days is prescribed by this act, or shall be mentioned in any rule or order of court or general order which shall at any time be made under this act, for the doing of any act, or for any other purpose, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first, and inclusive of the last day, unless the last day shall fall on a Sunday, Christmas day, or on any day appointed by the President of the United States as a day of public fast or thanksgiving, or on the Fourth of July, in which case the time shall be reckoned exclusive of that day also."

It appeared in the case that a fraudulent assignment, transfer and conveyance had been made December 8, 1869, and that a petition in bankruptcy was filed April 8, 1870. It was contended by the respond-

ents that "the securities and property were not transferred, assigned, and conveyed within four months next before the petition in bankruptcy was filed."

The court said:

"Taken literally, it might be suggested that the phrase 'four months before the filing of the petition,' would exclude the day the petition was filed, fractions of a day being forbidden in such a computation; nor would it benefit the respondents if the rule prescribed by section 5013 of the Revised Statutes should be applied, which is, that in all cases in which any particular number of days is prescribed in that title, or shall be mentioned in any rule or order of court, or general order, which shall at any time be made under the same for the doing of any act, or for any other purpose, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first, and inclusive of the last day. Where the phrase to be construed does not contain any expression to the contrary, the enactment is that that rule shall apply, leaving it to be understood that the phrase to be construed may contain words prescribing its own rule in that regard, and that if it contains any inconsistent expression to the contrary, that the rule prescribed in that section shall not necessarily control the meaning of the phrase to be construed. Apply that qualification to the rule prescribed in section 5013, and still it might be suggested that the meaning of the phrase 'within four months before the filing of the petition,' is entirely consistent with that rule. Unless the day when the notes, accounts and property were assigned, and the day when the petition in bankruptcy was filed, are both included in the computation, the defence falls, and the complainant is entitled to an affirmance of the decree. Neither argument nor authority is found in the brief of the respondents supporting any such rule of construction, and it is believed that no decided case can be referred to, where such a theory was ever adopted. * * * Due weight in every case should be given to the words of the phrase to be construed, and by so doing many of the reported cases otherwise seemingly inconsistent may be satisfactorily reconciled. Still it must be admitted that it is difficult, if not impossible, to deduce from the reported decisions any rule which will apply in all cases, nor is it necessary to make the attempt in this case, as the court is unanimously of the opinion that the day the petition in bankruptcy was filed must be excluded in making the computation, and that the decree of the circuit court is correct. Rev. St. § 5013."

The present bankrupt act contains a provision substantially similar to that in section 5013. Section 31 is as follows:

"Whenever time is enumerated by days in this act, or in any proceeding in bankruptcy, the number of days shall be computed by excluding the first and including the last, unless the last fall on a Sunday or holiday, in which event the day last included shall be the next day thereafter which is not a Sunday or a legal holiday."

The phrase which was construed in Dutcher v. Wright was "within four months before the filing of the petition." The phrase to be construed in this case is "within four months after the commission of such act." In the former case time was computed backward from the terminus a quo, namely, the filing of the petition. In the present case it is to be computed forward from the terminus a quo, namely, the confession of judgment. The rule of computation is the same in each of these cases. As the terminus a quo in the former was excluded, so it must be excluded in the latter. The same principle applies to the merely converse cases. Indeed there is in the present case possibly stronger ground than in the former for the application of the rule of exclusion of the terminus a quo, as the bankrupt act now in force provides with respect to the computation of the four months after an act of bankruptcy by way of confession of judgment

that "such time shall not expire until four months after the date" of such forbidden act. Section 31 provides that "whenever time is enumerated by days in this act * * * the number of days shall be computed by excluding the first and including the last unless" &c. Section 5013 of the revised statutes provides that "in all cases in which any particular number of days is prescribed by this act * * * for the doing of any act, or for any other purpose, the same shall be reckoned, in the absence of any expression to the contrary, exclusive of the first and inclusive of the last day, unless" &c. I am unable to perceive any distinction in meaning between the phrase "whenever time is enumerated by days in this act" and "in all cases in which any particular number of days is prescribed by this act." In Dutcher v. Wright this rule was relied on as, not inconsistent with, but applicable to the computation of months. This could only have been done on the ground that the specification of a number of months from an event was equivalent to an enumeration of the days contained in those months, as applied to a given case. Whatever force was given to section 5013 in Dutcher v. Wright must be accorded to section 31 in the present case. It must be held in view of the foregoing authorities that the petition in bankruptcy could properly have been filed February 20, 1899. Even were it assumed that October 20, 1898, must be excluded from the computation, it would by no means follow that a petition could not legally have been filed February 20, 1899. The court takes judicial cognizance of the fact that February 19, 1899, was Sunday. And, altogether aside from section 31, there is high authority to the effect that where the last day of a period, during which an act is required to be done, is dies non, the act can in many cases be legally done on the following day. In Cattle Co. v. Becker, 147 U. S. 47, 55, 13 Sup. Ct. 220, the court said:

"As the ninetieth day fell on Sunday, the lands were not open to another application until Monday, the general rule being that, when an act is to be performed within a certain number of days, and the last day falls on Sunday, the person charged with the performance of the act has the following day to comply with his obligation. End. Interp. St. § 393; Salter v. Burt, 20 Wend. 205; Hammond v. Insurance Co., 10 Gray, 306."

This rule, of course, does not apply to commercial paper payable with days of grace. But the conclusion that October 20, 1898, is to be excluded from the computation of time renders unnecessary any decision of the point last suggested.

The remaining question is whether a duplicate copy of the petition could with leave of the court be legally filed after the expiration of the four months, only a single copy of the petition having been filed within that period. The duplicate copy was not filed until March 2, 1899, ten days after the four months had expired. If it could legally be filed at that time, the fact that an order was made that it should then be filed as of February 20, 1899, could not, on the principle that utile per inutile non vitiatur, affect the validity of the proceeding. The act provides that in involuntary bankruptcy "a petition may be filed" within the prescribed period of four months. It does not in express terms provide that no such petition shall be filed after the expiration of that period. But the proceedings constitute

a special statutory remedy, and the grant of power to file the petition within four months carries with it its own limitation, namely, that the petition can be filed only within that period. No power having been conferred to file it after that period, the effect of the act is precisely the same as if it had expressly prohibited the filing of the petition thereafter. Section 1 provides that "'petition' shall mean à paper filed in a court of bankruptcy or with a clerk or deputy clerk by a debtor praying for the benefits of this Act, or by creditors alleging the commission of an act of bankruptcy by a debtor therein named." Whenever reference is made in the act to an application in involuntary proceedings to have a debtor adjudged bankrupt the word used is "petition," not "petitions." Section 59, subd. c, provides that "petitions shall be filed in duplicate, one copy for the clerk and one for service on the bankrupt." Section 18 provides that "upon the filing of a petition for involuntary bankruptcy, service thereof, with a writ of subpœna, shall be made" &c. Section 30 is as follows: "All necessary rules, forms, and orders as to procedure and for carrying this Act into force and effect shall be prescribed, and may be amended from time to time, by the Supreme Court of the United States."

Form No. 3 prescribed by the Supreme Court (18 Sup. Ct. xix.) shows that a petition in involuntary bankruptcy must be under oath or affirmation, and that it prays that "service of this petition, with a subpœna, may be made" &c., and form No. 4 (Id. xx.), being the order to show cause, directs that "a copy of said petition, together with a writ of subpœna, be served" as therein provided. When, therefore, the act provides that a petition shall be filed in duplicate, "one copy for the clerk and one for service on the bankrupt," it must be held to have intended that one petition in the form of two duplicate originals should be filed. The use of the term "copy" in such a connection is not unusual. A deed executed in duplicate is not in legal contemplation two deeds, but only one, and it is quite common to say that A holds one copy and B the other. Unless "copy" as here used means a duplicate original there would be much difficulty in construing the law. It is wholly inadmissible to assume that the act intended one sworn paper and also two unsworn copies of that paper to be filed; and on the assumption that the act intended that only one of two papers should be verified, and that the other should be merely an unverified copy of the former, nothing can be found in the law to indicate which of the two is "for the clerk" or "for service on the bankrupt." Rule 1 (18 Sup. Ct. iv.) provides that the clerk's docket shall contain a memorandum of the filing of the petition, but does not mention a copy of the petition, and as the petition is to be filed in duplicate the docket should show such filing. Whether there was a sufficient reason for requiring duplicate originals to be filed is not a legitimate question for this court. That inquiry belonged to the legislative branch of the government. There is nothing in the act or in the rules or forms prescribed by the Supreme Court which states or indicates that the duplicate copies or originals of the petition in involuntary bankruptcy may be filed at different times. On the contrary, the act requires that it "shall be filed in duplicate, one copy for the clerk and one for service on the bankrupt," and rule 2 (Id.) pro-

vides that "the clerk or referee shall indorse on each paper filed with him the day and hour of filing" &c. As the petition cannot legally be filed unless in duplicate, and as the day and hour of filing must be endorsed on it, it necessarily follows that the duplicate copies must be filed at the same time. It was contended at the hearing that, if one of the duplicate copies should be filed and sometime thereafter the other should also be filed, upon the filing of the latter the petition could be considered as having been filed in duplicate. But the petition, unless in duplicate when presented to the clerk, would be insufficient as not conforming to the requirements of the act, and consequently he would possess no authority to file only one duplicate, and certainly could not file it until the other duplicate was presented to him. In such case the endorsement of the day and hour of filing would have reference to the time of filing the second paper presented to him, and not the first, and until then proceedings in bankruptcy could not properly be considered as having been commenced. That both duplicates should be filed together seems the fair import of the provision requiring the petition to be filed in duplicate, and of rules 1 and 2. It is also a reasonable deduction from the language employed in forms Nos. 8, 14, 15, 31, 32, 33, 34, 35, 36 and 59 (18 Sup. Ct. xxi., xxv., xxxii., xxxiii., xxxiv., xxxv., xlvi.). Nothing that is here said is inconsistent with the idea that one duplicate may be deposited with the clerk to be retained, without filing, until the other duplicate is delivered to him, and that then both may be filed. But, even if it be assumed that it was unnecessary to file duplicate copies or originals of the petition at the same time, it appears in the present case that, while one duplicate was filed February 20, 1899, the other was not filed until ten days after the expiration of the statutory limitation of four months. It was claimed on behalf of the petitioner that, as the act does not require process to be served or even to issue within that period, and as a duplicate original had been filed within time, the court had acquired jurisdiction of the cause, and that the purposes of the act would be subserved by the filing of the other duplicate in such time as not to interfere with the operation of the act touching subsequent steps to be taken in the cause. But in what sense had the court acquired jurisdiction of the cause? It had, without the filing of any petition, general jurisdiction in bankruptcy over the subject matter. But it certainly had not acquired jurisdiction in personam. Nor had it within the period of limitation been placed in such a position as to be able to issue process against the respondent. There is nothing in the act or rules which clothed the court with power, on the facts disclosed in this case, to issue such process either within or on the expiration of that period. The act required the petition to be filed in duplicate within that time, one copy for the clerk and the other for service on the alleged bankrupt; and the clerk is nowhere required by the act or rules to make a copy for such service. On the contrary, the act required that the copy for service should be furnished by the petitioner, doubtless for the saving of costs, and possibly for the avoidance of delay. The various provisions of the act clearly disclose a legislative intent that proceedings in bankruptcy should be conducted and closed with all reasonable expedition. While it is

true that a petition may be filed at such time on the last day of the period of limitation as to render impossible either the service or issuance of process within that period, it was nevertheless the manifest intention of Congress that the duplicate copy for service should be filed within that period, ready to be served with all convenient speed. The provisions of the act requiring the filing of the petition in duplicate within that period and providing that upon the filing of the petition "service thereof, with a writ of subpœna, shall be made" &c. show clearly and explicitly that within the given period of four months everything must be done by the petitioner which can be done by him to permit process forthwith to issue.   Some reliance was placed by the counsel for the petitioner on the provision of section 18 that the process "shall be returnable within fifteen days, unless the judge shall for cause fix a longer time; but in case personal service cannot be made, then notice shall be given by publication in the same manner and for the same time as provided by law for notice by publication in suits in equity in courts of the United States."   But the time when a writ, issued for the purpose of commencing a suit, is returnable, has no bearing on the question whether the action in which it is issued is or is not barred by the statute of limitation applicable to it.   The fact that the defendant may be brought into court as soon in an action brought after the expiration of the period of limitation as in a similar action brought before such expiration, is no answer to the statutory bar.   There are no elements of hardship in the case which could tend to induce the court to place a different construction on the act, even were its terms less clear than they are.   To require a petitioner to file his petition in duplicate within the specified period involves no hardship or injustice.   On the other hand, to adopt a different construction would inevitably open wide the door to delays, confusion, uncertainty and lack of uniformity in the administration of the law. The language of the act touching the point under immediate consideration is plain.   Where a statute is in its terms clear and explicit, to seek for the legislative intention elsewhere than in the language employed is to forsake the path of legitimate judicial investigation and to enter the realm of uncertainty and mere conjecture.   Different minds may entertain different views of the policy of the same statute and of the equity or hardship of its application to a given case coming within its terms.   In the opinion of one judge the hardship which would result from the operation of the law in a certain case might be so great as to lead him to the conclusion that the legislature could not have intended the law to apply to that case; while another judge might hold that a precisely similar case came clearly within the operation of the law, either on account of his failure to recognize any such hardship or because, recognizing the hardship, he might still be of the opinion that the legislature intended the law to be uniform in its operation.   Departure from the language of a statute, when it is plain and unambiguous, for the purpose of ascertaining its intention is thus calculated to veil that intention in a cloud of uncertainty, and too frequently operates to substitute the opinion of the judiciary as to what the law ought to have been, for the declared intention of the legislature.   The appearance of the alleged bankrupt did not cure the

omission to file the petition in duplicate within the statutory period. The bar of the statute of limitations is never removed by the mere appearance of the defendant. Indeed it is necessary for him to appear in order to interpose a plea, demurrer, or in some cases a motion to dismiss. While the practice governing the manner of taking advantage of a statutory limitation varies in different places and proceedings, no question has been raised in this case as to the propriety of proceeding by a motion to dismiss; both parties agreeing on that mode of procedure. It was urged on behalf of the petitioner that under rule 11 (18 Sup. Ct. v.) the court had power to allow, by way of amendment of the proceedings in bankruptcy, the second duplicate of the petition to be filed March 2, 1899. That rule is as follows:

"The court may allow amendments to the petition and schedules on application of the petitioner. Amendments shall be printed or written, signed and verified, like original petitions and schedules. If amendments are made to separate schedules, the same must be made separately, with proper references. In the application for leave to amend, the petitioner shall state the cause of the error in the paper originally filed."

This rule does not, in my judgment, touch this case. Its purpose is to authorize the court to allow corrections to be made of errors, insufficiencies and uncertainty in the petition or schedules, but not practically to repeal the legislative declaration that petitions must be filed in duplicate within the four months specified. This court has no power by an order to remove the statutory bar in the teeth of the act. If it had, it would be difficult to perceive why other courts in actions of assumpsit, case or the like, barred by the general statutes of limitation, should not do the same. This would not be administration of the law, but legislation.

The petition must be dismissed with costs.