## In re BELLAH.

(District Court, D. Delaware. February 25, 1902.)

**1. INVOLUNTARY BANKRUPTCY—PETITION.**

An averment in a petition in involuntary bankruptcy that the defendant at a certain time received a specified sum of money from a specified source, which sum "he has ever since concealed and secreted with intent to hinder, delay or defraud his creditors", is not defective for want of particularity; the manner and details of the concealment being matters of evidence and not of averment.

**2. SAME—FRAUDULENT CONCEALMENT.**

Fraudulent concealment may be shown as well by circumstantial as by direct evidence, and where the evidence is wholly circumstantial, it is impossible, and therefore unnecessary, to aver in the petition the precise details of the act of concealment.

**8. SAME—VERIFICATION OF PETITION.**

While a petition in involuntary bankruptcy must be signed and verified in duplicate by the petitioning creditors, or those authorized to represent them, the bankruptcy act does not provide or require that such petition shall be verified by a formal affidavit or an affidavit of any sort; the only provision applicable to the verification of such petition being that "all pleadings setting up matters of fact shall be verified under oath."

**4. SAME—SIGNATURE OF CORPORATION.**

A corporation can act only through its officers, or agents, and where its name is subscribed by an individual to a petition in involuntary bankruptcy, and the petition purports to be verified by the same person, it is necessary that such person should set forth under oath or affirmation that he was authorized to sign and verify the petition on behalf of the corporation. The omission of such an averment, unless remedied, is fatal; but is not an incurable defect, jurisdictional or otherwise.

**5. SAME—ERROR IN JURAT.**

A mere clerical error in the jurat of one of the duplicate originals of a petition in involuntary bankruptcy can be cured by amendment.

**6. SAME—AMENDMENT OF PETITION.**

Rule 11 of the general orders in bankruptcy deals with amendments to a petition and schedules, but was not intended to abrogate or restrict the general power of amendment in other respects vested in the court.

**7. SAME—DEFECTS IN PETITION.**

In accordance with the elementary rule that in proceeding on a statute the pleader must negative an exception in the enacting clause, a petition in involuntary bankruptcy against an individual is defective if it omits to aver that the defendant was not a wage-earner nor a person engaged chiefly in farming or the tillage of the soil. Such a defect, however, can be corrected by amendment.

(Syllabus by the Court.)

In Bankruptcy.

Henry C. Conrad and Wm. S. Stenger, for creditors.

H. H. Ward, J. E. Smith, and C. W. Smith, for bankrupt.

BRADFORD, District Judge. This is a motion for the dismissal of a petition in involuntary bankruptcy filed against Thomas S. Bellah, April 30, 1901. The first ground assigned in support of the motion is that "said petition in bankruptcy doth not set forth any act of

¶ 4. See Bankruptcy, vol. 6, Cent. Dig. § 123.

bankruptcy on the part of the said Thomas S. Bellah." The petition avers that the defendant is insolvent and that within four months next preceding its date he committed an act of bankruptcy,

—"in that he did heretofore, to wit, on the 31st day of December, A. D. 1900, have passed before the Register of Wills in and for the County of New Castle, State of Delaware, his own account as Administrator of the estate of Edward T. Bellah, deceased, whereupon he became entitled to, and did, receive from said estate as his own individual share of the same the sum of $29,453.25, which said sum of money he then and there, and has ever since, concealed and secreted, with intent to hinder, delay or defraud his creditors."

By section 3a(1) of the bankruptcy act the concealment by a person, within the class of those who may be declared involuntary bankrupts, of any part of his property with intent to hinder, delay or defraud his creditors or any of them is made an act of bankruptcy; and by section 1(22) of the act it is provided that " 'conceal' shall include secrete", &c. The defendant contends that there is no sufficient averment of an act of bankruptcy, because, in the language of counsel, "there is a total failure to specify any particular act of concealment, and to show how, when, or where such concealment was effected". Some color is given to this contention by certain dicta in one or more of the cases cited on the part of the defendant; but a brief review of the cases will disclose that, with possibly one exception, none of them, so far as the points actually decided are concerned, can be considered authoritative on the question now under discussion. In the case of In re Beardsley, Fed. Cas. No. 1,183, a specification in opposition to the discharge of a bankrupt "that he has concealed and covered up his property, for the purpose of defrauding his creditors existing at the time of filing his petition", without specifying what property had been so concealed and covered up, was held bad as being too vague and general. So, in the case of In re Butterfield, Fed. Cas. No. 2,247, 5 Biss. 120, it was held that a specification that a bankrupt "has given a fraudulent preference, contrary to the provisions of the act", without showing what property was the subject-matter of the preference, was bad; the court saying that it lacked a' specification in detail, "which would be necessary to enable the party to plead it in bar". So, also, in the case of In re Rathbone, Fed. Cas. No. 11,580, 2 Ben. 138, a specification that a bankrupt "has been guilty of fraud in covering, concealing, and distributing his property" was held bad as being too general. Again, in the case of In re Mawson, Fed. Cas. No. 9,318, 2 Ben. 332, the court held a specification too vague and general which stated with respect to the bankrupt that "in contemplation of becoming bankrupt, he has made a transfer or conveyance of part of his property, for the purpose of preventing the same from coming into the hands of the assignee, and of being distributed according to law in satisfaction of his debts"; the court saying "the third specification should state what part of his property he has so transferred". In the case of In re Carrier (D. C.) 47 Fed. 438, specifications were filed, of which the first averred that after adjudication in bankruptcy and the choice of assignees, the bankrupt refused to surrender to the assignees the papers relating to his estate, and concealed from the assignees " 'certain papers' relating to judgments obtained against him prior to his adjudication, 'the papers' so

concealed being a receipt of one Alexander Smith for the notes upon which the judgments were recovered". The court held that the charge of concealment contained in the first specification was bad as not being sufficiently specific. Whether the cases cited in the opinion support the conclusion which was reached may admit of grave question. But however this may be, In re Carrier cannot, in view of the authorities and considerations hereinafter referred to, be treated as controlling the case in hand. All the cases above cited related to the sufficiency of specifications or allegations impeaching the validity of a discharge in bankruptcy. In the case of In re Cliffe, 2 Am. Bankr. R. 317, 94 Fed. 354, a petition in involuntary bankruptcy averred that the defendant was insolvent and charged as an act of bankruptcy that he "on the twenty-seventh day of January, 1899, suffered, while insolvent, other creditors to obtain a preference through legal proceedings, and not having at least five days before sale or final disposition of his property affected by such preference vacated such preference". There was no specification of the details of the alleged preference. The court stated that objection on the ground of such omission, if seasonably made, would have been good, but that it was made too late. In the case of In re Nelson (D. C.) 98 Fed. 76, the petition alleged that the defendant had within four months next prior to the filing of it "transferred, while insolvent large amounts and values of his property to one or more of his creditors, with an intent to prefer said creditors over his other creditors". On a motion to dismiss, this allegation was held insufficient, as lacking reasonable certainty; but leave to amend was granted. It has been held that specifications in opposition to a discharge in bankruptcy must in point of certainty and particularity of averment conform to the requirements of criminal pleading. Assuming that this rule applies as well to the averment in a petition of an act of bankruptcy as to specifications in opposition to a discharge, the sufficiency of such averment is to be determined by the same rules relating to certainty and particularity which would apply if the act of bankruptcy as averred in the petition were charged in an indictment as a punishable offence. Treating, then, the alleged act of bankruptcy as a criminal offence set forth in an indictment, the charge in effect is that the defendant having on a specified day within four months next preceding the filing of the petition, namely, December 31, 1900, passed before the Register of Wills of New Castle county, Delaware, his account as administrator of a specified estate, namely, the estate of Edward T. Bellah, deceased, and having then and there become entitled to and received from that estate a specified sum of money, namely, $29,453.25, as his individual share of such estate, then and there and ever since concealed and secreted the sum of money so received by him with intent to hinder, delay or defraud his creditors. The source, identity, amount and receipt by the defendant of the fund are distinctly and with particularity pointed out. It is only the generality of the charge of concealment or secretion that is objected to by the defendant; and this objection is based solely on the ground that the petitioners have failed to specify any particular act of concealment or to show how, when or where such concealment was

effected. But the offence on which the petition is based is not concealment of property by any particular act, nor in any particular manner, nor at any particular time, nor under any particular circumstances. It is the concealment of the specified fund by the defendant with the specified evil intent. It is true that if there was concealment there must have been some act of concealment, and it must have been effected in some manner and at some time. The manner and details, however, of the concealment, are matters of evidence, and not of averment. Indictments for larceny charge the defendant with feloniously stealing, taking and carrying away the personal property of another, but do not specify the manner or details or the circumstances attending the act of theft. So, in cases of embezzlement, the indictment after charging the receipt by the defendant, in a specified fiduciary capacity, of moneys or other personal property, and the fact of embezzlement, need not, and usually does not, set forth the details of the act of embezzlement. It is a general rule, subject to qualification in some instances, that an indictment for a statutory offence is sufficient if it charges the defendant with the commission of acts within the statutory description, "in the substantial words of the statute without any further expansion of the matter". U. S. v. Simmons, 96 U. S. 360, 362, 24 L. Ed. 819; Same v. Gooding, 12 Wheat. 460, 474, 6 L. Ed. 693; Claassen v. U. S., 142 U. S. 140, 146, 12 Sup. Ct. 169, 35 L. Ed. 966; Ledbetter v. Same, 170 U. S. 606, 612, 18 Sup. Ct. 774, 42 L. Ed. 1162; Pounds v. Same, 171 U. S. 35, 38, 18 Sup. Ct. 729, 43 L. Ed. 62; Kirby v. Same, 174 U. S. 47, 63, 19 Sup. Ct. 574, 43 L. Ed. 890. But "it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished". U. S. v. Carll, 105 U. S. 611, 26 L. Ed. 1135. In U. S. v. Simmons, supra, the court through Mr. Justice Harlan, referring to the general rule, said:

"But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defense, and plead the judgment as a bar to any subsequent prosecution for the same offence. An indictment not so framed is defective, although it may follow the language of the statute."

In Ledbetter v. U. S., supra, the court through Mr. Justice Brown, said:

"We have no disposition to qualify what has already been frequently decided by this court, that where the crime is a statutory one it must be charged with precision and certainty, and every ingredient of which it is composed must be clearly and accurately set forth, and that even in the cases of misdemeanors the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offence intended to be charged."

But the qualification of the general rule, while requiring that the defendant shall be apprised with reasonable certainty of the offence charged against him, does not contemplate that mere matter of evidence not necessary for that purpose shall be spread upon the face

of the indictment. In the case last cited Mr. Justice Brown further said:

"The cases wherein it is held that an indictment in the exact language of the statute is not sufficient are those wherein the statute does not contain all the elements of the offence, as in U. S. v. Carll, 105 U. S. 611 [26 L. Ed. 1135], where a statute against passing counterfeit money failed to aver the scienter; but where the statute sets forth every ingredient of the offence, an indictment in its very words is sufficient, though that offence be more fully defined in some other section. * * * Notwithstanding the cases above cited from our reports, the general rule still holds good that upon an indictment for a statutory offence the offence may be described in the words of the statute, and it is for the defendant to show that greater particularity is required by reason of the omission from the statute of some element of the offence. Where the statute completely covers the offence the indictment need not be made more complete by specifying particulars elsewhere obtained."

Here an act of bankruptcy is charged in the language of the statute. The petition alleges that the defendant at and since a specified time "concealed and secreted" a specified fund "with intent to hinder, delay or defraud his creditors". The charge is clear and specific. No room is left for doubt on the part of the defendant as to the nature and extent of the accusation. If embodied in an indictment, either an acquittal or a conviction would operate as a bar to a second prosecution for the same offence; and equally the defendant would be apprised with reasonable certainty of the charge brought against him. Unnecessary and impracticable particularity is not required in criminal pleading. In Evans v. U. S., 153 U. S. 584, 590, 14 Sup. Ct. 934, 38 L. Ed. 830, the court, through Mr. Justice Brown, said:

"While the rules of criminal pleading require that the accused shall be fully apprised of the charge made against him, it should, after all, be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent, and no impracticable standards of particularity should be set up, whereby the government may be entrapped into making allegations which it would be impossible to prove."

If the defendant concealed the specified fund as alleged, it must be assumed that the details and circumstances of the concealment were within his knowledge, and no hardship can be involved in requiring him to answer and meet the charge of concealment, as made, without "further expansion of the matter". On the other hand, to require the petitioning creditors in such a case to set forth the details of the concealment or secretion not only would be unnecessary to the due protection of the defendant, but might, and probably would, require the performance of an impossibility. The application of such an impracticable standard of particularity would necessarily defeat all petitions in involuntary bankruptcy based on fraudulent concealment by the defendant of his property, where the evidence of such concealment is circumstantial and not direct and positive. A defendant may have explicitly admitted to many persons that he at a certain time concealed a specified portion of his property with the forbidden intent; yet, on the contention made here by the counsel for the defendant, no petition could be sustained against such defendant on the strength of such admissions, unless the petitioners were able to specify some particular act of concealment, or to show how or where such conceal-

ment was effected. Fraudulent concealment may be shown as well by circumstantial as by direct evidence; and where the evidence is wholly circumstantial, it is impossible and unreasonable, and therefore unnecessary, to aver in the petition the precise details of the act of concealment. Necessity for such strictness and particularity of averment as are contended for does not seem to accord with the authorities on criminal pleading. In Ledbetter v. U. S., 170 U. S. 606, 18 Sup. Ct. 774, 42 L. Ed. 1162, the court had under consideration an indictment charging that Ledbetter did "wilfully, unlawfully and feloniously carry on the business of a retail liquor dealer without having paid the special tax therefor, as required by law", &c. · The offence was charged in the language of the statute. The court through Mr. Justice Brown said:

"Defendant insists that it was not sufficient to charge him with the offence in the language of the statute, but that the indictment should have set forth the particular facts which show that he was a retail liquor dealer. and should also have averred that he had not paid the tax of $25 provided by law. By section 18 of the same act retail dealers in liquor are required to pay a special tax of $25, and 'every person who sells or offers for sale. foreign or domestic distilled spirits, wines or malt liquors, otherwise than as hereinafter provided, in less quantities than five wine gallons at the same time, shall be regarded as a retail dealer in liquors'. The question presented for our consideration is whether it is sufficient to charge the offence in the language of the statute creating such offence and fixing the punishment therefor, or whether it is necessary to charge it in the language of the statute defining the business of a retail liquor dealer, averring that the defendant had done the acts therein stated without payment of the special tax, and had therefore rendered himself amenable to the punishment provided by the former section. We do not undertake to say that the latter would not be a proper course, but we think an allegation in the language of the statute creating the offence is sufficient. * * * But we are of opinion that the statute in this case (section 16) does define the offence with the requisite precision, and that the pleader has chosen the safer course in charging it in the language of this section. The offence does not consist in selling or offering for sale to a particular person distilled spirits, etc., in less quantities than five gallons at one time, but in carrying this on as a business; in other words, in the defendant holding himself out to the public as selling or offering for sale, etc."

It is evident that carrying on the business of a retail liquor dealer involves the sale of liquor to individuals. But notwithstanding that fact, the offence consisted in carrying on such business without the payment of the required tax, and not in the sale, without such payment, of liquor to any particular person, although the sale, without the payment of such tax, of liquor to different persons might furnish evidence sufficient to establish the offence as charged in the indictment. In Kirby v. U. S., 174 U. S. 47, 19 Sup. Ct. 574, 43 L. Ed. 890, Kirby was indicted under section 2 of the act of March 3, 1875, entitled "An act to punish certain larcenies, and the receivers of stolen goods" (18 Stat. 479), for receiving postage stamps, the property of the United States, with intent to convert the same to his own use, knowing at the time that the same had been stolen from the United States. The court, through Mr. Justice Harlan, said:

"Another contention by the accused is that the indictment was fatally defective in not stating from whom the defendant received the stamps. This contention is apparently supported by some adjudications, as in State v.

Ives, 13 Ired. 338, but upon a careful reading of the opinion in that case it will be found that the judgment rests upon the ground that the statute of North Carolina, taken from an old English statute, made the receiver of stolen goods strictly an accessory and contemplated the case of the goods being received from the person who stole them. As already stated the act of Congress upon which the present indictment rests makes the receiving of stolen property of the United States with the intent by the receiver to convert it to his own use or gain, he knowing it to have been stolen, a distinct, substantive felony, for which he can be tried either before or after the conviction of the principal felon, or whether the latter is tried or not."

After reviewing some authorities the court continued:

"In State v. Hazard, 2 R. I. 474 [60 Am. Dec. 96], an indictment charging the accused with fraudulently receiving stolen goods, knowing them to have been stolen, was held to be good, although it did not set forth the name of any person from whom the goods were received, nor that they were received from some person or persons unknown to the grand jurors. We therefore think that the objection that the indictment does not show from whom the accused received the stamps, nor state that the name of such person was unknown to the grand jurors, is not well taken. If the stamps were in fact stolen from the United States, and if they were received by the accused, no matter from whom, with the intent to convert them to his own use or gain, and knowing that they had been stolen from the United States, he could be found guilty of the crime charged even if it were not shown by the evidence from whom he received the stamps. This rule cannot work injustice nor deprive the accused of any substantial right. If it appears at the trial to be essential in the preparation of his defence that he should know the name of the person from whom the government expected to prove that he received the stolen property, it would be in the power of the court to require the prosecution to give a bill of particulars."

The receipt of the stolen property from a particular person or particular persons, although it might or would be involved in the commission of the offence in any given instance, did not constitute the offence dealt with in Kirby v. U. S., which was the receipt of the property with the specified unlawful intent. In Pounds v. U. S., 171 U. S. 35, 18 Sup. Ct. 729, 43 L. Ed. 62, Pounds was indicted for violation of section 3296, Rev. St. The sixth count of the indictment was in the language of the statute and charged that the defendant "unlawfully did conceal and aid in the concealment of distilled spirits on which the tax had not been paid, which said spirits had been removed to a place other than the distillery warehouse provided by law, contrary", &c. The defendant, having been convicted, moved in arrest of judgment on the ground, among others, that the sixth count "is too vague and uncertain to authorize a judgment and sentence against the defendant". The court, through Mr. Justice McKenna, said:

"The offence was purely statutory. In such case it is generally sufficient to charge the defendant with acts coming within the statutory description in the substantial words of the statute without any further expansion of the matter. U. S. v. Simmons, 96 U. S. 360 [24 L. Ed. 819]; Same v. Britton, 107 U. S. 655 [2 Sup. Ct. 512, 27 L. Ed. 520]. One of the acts which is made an offence by section 3296 is the concealment of distilled spirits on which the tax has not been paid, removed to a place other than the distillery warehouse provided by law. The indictment charges in the language of the statute the performance of that act at a particular time and place. It was therefore sufficiently certain."

In the case last cited concealment was charged neither more nor less generally than it has been in the petition in bankruptcy. As the allegation of concealment would be sufficient to satisfy the requirements of criminal pleading, I have no reason to doubt that it is sufficient in a petition in involuntary bankruptcy.

The second ground in support of the motion is that it does not appear from the petition that it was "verified under oath or affirmation of all the three petitioners". On this ground the first contention of the defendant is that "the first two affidavits are not signed by affiants, and hence are not legal affidavits". The bankruptcy act does not provide or require that a petition in involuntary bankruptcy shall be verified by a formal affidavit or an affidavit of any sort. The only provision applicable to the verification of such a petition is that "all pleadings setting up matters of fact shall be verified under oath", section 18(c); "oath" by virtue of section 1(17) including "affirmation". The petition in duplicate must be signed and verified by the petitioning creditors, or those authorized to represent them in that behalf, but it is not necessary in the case of a petition in involuntary bankruptcy that they shall subscribe any affidavit. Form No. 3 (89 Fed. xxviii, 18 Sup. Ct. xix), prescribed by the Supreme Court, was followed in the case of the two first named petitioners; that form containing after the petition merely the jurat by a proper officer. It shows that oath or affirmation was made that the statements contained in the foregoing petition subscribed by them are true. So a simple jurat is prescribed in the case of the verification of schedules "A" and "B" annexed to form No. 1 (89 Fed. xv, 18 Sup. Ct. xi), and elsewhere among the forms. Indeed, if the jurat prescribed for a petition in involuntary bankruptcy could properly be considered an affidavit, it might well be doubted whether it would be necessary that it should be subscribed by the affiants. Norton v. Hauge, 47 Minn. 405, 50 N. W. 368; Garrard v. Hitsman, 16 N. J. Law, 124; Jackson v. Virgil, 3 Johns. 540; Bates v. Robinson, 8 Iowa, 318. But it is not necessary to rely on the doctrine of the authorities just cited, as in the case in hand no affidavit is required, and the prescribed form of verification has been followed. The first contention by the defendant on this branch of the case therefore cannot be sustained. In support of the ground that it does not appear that the petition was verified by all the petitioners the defendant further contends that the verification by Steinman and Pitcher purports to have been made by them in a representative capacity as officers respectively of the two corporations creditors named in the petition, but that they have failed to allege and swear "to the fact of their agency or representative capacity". This objection is, in my opinion, well taken. A corporation can act only through its officers or agents; and where its name is subscribed by an individual to a petition and the petition purports to be verified by the same person it is necessary that such person should set forth under oath or affirmation that he was authorized to sign and verify the petition on behalf of the corporation. The omission of such an averment unless remedied is fatal. It is not, however, an incurable defect, jurisdictional or otherwise, but can be remedied by amendment. In re Chequasset Lumber Co. (D. C.) 112 Fed.

56; Bank v. Craig (D. C.) 110 Fed. 137; Carriage Co. v. Stengel, 37 C. C. A. 210, 95 Fed. 637; In re Simonson (D. C.) 92 Fed. 904; In re Simmons, Fed. Cas. No. 12,864; In re McNaughton, Fed. Cas. No. 8,912; In re Rosenfields, Fed. Cas. No. 12,061; Roche v. Fox, Fed. Cas. No. 11,974. Such an amendment does not constitute either a new petition or a new verification. Its sole function is to cause a necessary fact to appear, which existed at the time of the signing and verification of the petition, namely, the authority on the part of the person signing and verifying the petition to act in that behalf.

The defendant further contends in support of the second ground of the motion that it appears from the duplicate original of the petition remaining in the clerk's office that the commission of the notary public certifying the verification expired in January, 1901; that the verification was made in April, 1901; and that, therefore, the verification appears to have been made before a person who was not at the time authorized to administer an oath, and was a nullity. This objection is based on what seems a mere clerical error on the part of the notary public. Section 59(c) of the bankruptcy act provides with respect to petitions in involuntary bankruptcy that "petitions shall be filed in duplicate, one copy for the clerk and one for service on the bankrupt". The two papers, though termed copies, are duplicate originals. In re Stevenson (D. C.) 94 Fed. 110; In re Dupree (D. C.) 97 Fed. 28. Both of the originals were filed in the clerk's office April 30, 1901, without variance between them in words, letters or figures. There is a variance only in the jurats. In the first jurat of the copy "for the clerk" occur the words and figures:

"Sworn to and subscribed before me at the City of Lancaster in the State aforesaid this twenty-seventh day of April, A. D. 1901.

Chas. E. Long, Notary Public.

My commission expires Jany. 19, 1901."

In the first jurat of the copy "for service on the bankrupt" occur the words and figures:

"Sworn to and subscribed before me at the City of Lancaster in the State aforesaid this twenty-seventh day of April, A. D. 1901.

Chas. E. Long, Notary Public.

My commission expires Jany. 19, 1903."

It is evident that both copies were sworn to before the same officer at the same place and at the same time. Both copies of the petition were produced before the court at the hearing, were commented on by counsel during the argument, and are now before me for consideration. It cannot be assumed that, if the commission of the notary public was not to expire until January, 1903, he intentionally stated, when performing a notarial act in April, 1901, that it expired in January, 1901; nor can it be assumed that, if his commission had expired in January, 1901, he would have undertaken to perform a notarial act in April, 1901, nor, if he had, that he would have stated that his authority did not at that time exist. That 1901 was inadvertently substituted for the later year is further apparent from the language employed which is indicative of futurity, namely, "My commission expires Jany. 19, 1901", and not "My commission expired Jany. 19, 1901", although the statement was not made until April, 1901. As

the reference to the year 1901 was manifestly only a clerical error or inadvertence, the petitioner should, upon the production of the affidavit of the notary public or other satisfactory evidence showing the time of the continuance of his commission in force, be entitled to have the erroneous date corrected by amendment, so as to conform to the fact. To dismiss the petition by reason of this clerical error would or might be to sacrifice substantial justice to the merest technicality. Rule 11 of the general orders in bankruptcy (89 Fed. vii, 32 C. C. A. xiv) deals with amendments to a petition and schedules, but was not intended to abrogate or restrict the general power of amendment in other respects vested in the court; and I have no doubt that this court under that power has authority to allow an amendment in the case of such a clerical error. In re Donnelly (D. C.) 5 Fed. 783; In re McKibben, Fed. Cas. No. 8,859; Cook v. Jenkins, 30 Iowa, 452; Kruse v. Wilson, 79 Ill. 233; Williams v. Stevenson, 103 Ind. 243, 2 N. E. 728; Wakeling v. Watson, 1 Cromp. & J. 467; Borough of Pottsville v. Curry, 32 Pa. 443.

The third ground of the motion to dismiss is that "it appears by said petition and record that said petition was not filed in duplicate". The contention on this point is based solely upon the above mentioned clerical error as to date in the jurat of one of the duplicate originals of the petition. The ground assigned does not warrant this contention, as the jurat or verification is not a part of the petition. The petition was filed strictly in duplicate. Further, even if the jurat or verification could be treated as part of the petition, the error as to date could be amended as already stated. In re Stevenson (D. C.) 94 Fed. 110, and In re Dupree (D. C.) 97 Fed. 28, are inapplicable in this connection. In neither of those cases was a petition in duplicate, or purporting to be in duplicate, filed within four months after the act of bankruptcy; and the grounds of the decision in both cases disclose that they are in principle wholly foreign to the matter now under discussion.

The fourth, fifth and sixth grounds in support of the motion are all directed to one point and may be considered together. Collectively they aver in effect that it does not appear from the petition that the defendant is a person liable to be adjudged an involuntary bankrupt. Section 4(b) of the bankruptcy act provides that "any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil * * * may be adjudged an involuntary bankrupt". It is an elementary rule that in proceeding on a statute the pleader must negative an exception in the enacting clause. In Ledbetter v. U. S., 170 U. S. 606, 611, 18 Sup. Ct. 774, 42 L. Ed. 1162, the court said:

"The general rule is that while the pleader is not bound to negative a proviso, he is bound to aver that the defendant is not within any of the exceptions contained in the enacting clause of the statute."

In accordance with this principle the petition is defective in omitting to aver that the defendant was not a wage-earner nor a person engaged chiefly in farming or the tillage of the soil. In re Taylor, 42 C. C. A. 1, 102 Fed. 728. But this defect clearly can be corrected by amendment.

Under the circumstances I think that the purposes of justice will best be subserved by affording to the petitioners an opportunity to remedy within a reasonable time the above mentioned faults in the petition, verification and jurat. The petitioners, therefore, on proper application, will be granted leave to correct such faults by amendment within thirty days; but in default of such amendment the petition will be dismissed at the expiration of that period.